Eugene McMAHON, Julia McMahon, individually and as trustees of the David J. Hodder & Son, Inc. Employee Pension Plan; the David J. Hodder & Son Profit Sharing Plan; the Laurie Funeral Home, Inc. Employee Pension Plan; and the Laurie Funeral Home Profit Sharing Plan, Plaintiffs,

v.

SHEARSON/AMERICAN EXPRESS INC. and Mary Ann McNulty, Defendants.

No. 84 Civ. 3331 (LFM).

United States District Court, S.D. New York.

Feb. 23, 1989.

---

Shearson Lehman Hutton Inc. Gen. Counsel by Theodore A. Krebsbach and Jeffrey L. Friedman, New York City, for defendants.

Eppenstein & Eppenstein by Theodore G. Eppenstein, New York City, for plaintiffs.

## OPINION

MacMAHON, District Judge.

Defendant-brokers move under Fed.R. Civ.P. 65(a) for a preliminary injunction restraining plaintiff-customers and the Supreme Court of New York, New York County ("state court") from all further proceedings respecting plaintiffs' application in state court to enjoin arbitration under the rules of the New York Stock Exchange, Inc. ("NYSE") and to compel arbitration under the rules of the American Stock Exchange ("AMEX") before the American Arbitration Association ("AAA") of the claims alleged in the amended complaint filed in this court. Since there is no genuine issue as to any fact material to the relief sought, we will treat defendants' motion as one for summary judgment seeking a final and permanent injunction.[1]

---

1. *See* Fed.R.Civ.P. 56.

## BACKGROUND

The arbitration agreement between plaintiffs and defendants consists of two identical customer contracts, dated December 11, 1981, and June 15, 1982, ("agreement")[2] and sets forth a clear method for choosing one of three named arbitrators in the event of a controversy. Paragraph 13 of the agreement provides, in pertinent part:

> ... any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within 5 days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

The first notice to defendants of a controversy between the parties occurred when plaintiffs served the complaint in this action filed on May 11, 1984. Two months later on July 13, 1984, defendants moved, not to compel arbitration, but to dismiss the complaint for failure to state a claim. Before the motion was fully submitted and before defendants' answer, however, plaintiffs filed an amended complaint on October 26, 1984, and on January 14, 1985, defendants renewed their motion to dismiss.

It was not until March 30, 1985, that defendants notified plaintiffs of their intention to move to compel arbitration and:

> ... advised that, pursuant to paragraph 13 of the aforementioned customers' agreement, demand is hereby made that you elect [one of the above named arbitrators]. If you do not make such an election by registered mail addressed to the undersigned within five days after receipt of this demand, Shearson will thereupon exercise its right of election with regard thereto.

Plaintiffs' counsel received defendants' registered letter on April 5, 1985, but plaintiffs failed to exercise their right to select the arbitration forum within five days. Instead on April 11, 1985, plaintiffs' counsel replied to defendants' March 30 demand by stating that plaintiffs "intend to file an application to stay arbitration [and] I therefore decline to make an election ... said election to be made only upon the unlikely event of entry of a final order compelling arbitration." Four days later, on April 15, 1985, defendants responded by exercising their right to choose the arbitrator, and selected the NYSE. Simultaneously, defendants moved in this court to compel arbitration. Plaintiffs failed to cross-move or otherwise apply for a stay of arbitration, or to preserve whatever rights they may have had to choose the arbitrator.

Neither party mentioned the existence of the dispute over what event activated the right to select an arbitrator at the time of the motion. We granted defendants' motion to compel arbitration on all claims except the RICO claim, and without notice of the parties' differences over the selection procedure, entered a final order compelling arbitration on September 25, 1985.[3] The Second Circuit Court of Appeals reversed on April 16, 1986.[4]

The Supreme Court of the United States granted certiorari, and on June 8, 1988, reversed the Second Circuit.[5] In conformity with the decision of the Supreme Court, the mandate of the Second Circuit, dated October 22, 1987, affirmed our order of September 25, 1985, to the extent that it compelled arbitration of the securities and

---

**2.** The identical contracts will be treated as one agreement.

**3.** *McMahon v. Shearson/American Express,* 618 F.Supp. 384 (S.D.N.Y.1985), *aff'd in part, rev'd in part,* 788 F.2d 94 (2d Cir.1986), *rev'd,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

**4.** *McMahon, supra,* 788 F.2d 94 (2d Cir.1986).

**5.** *McMahon, supra,* 482 U.S. 220, 107 S.Ct. 2332 (1987).

state law claims, and reversed the order to the extent that it denied arbitration of the RICO claim. The mandate of the Second Circuit thus became the final order of this court, to "be entered as such by the clerk without further order,"[6] compelling arbitration of all of plaintiffs' claims. No further order or proceeding was necessary to commence arbitration before the forum already selected by defendants.

The dispute as to when the right to select an arbitrator was activated never surfaced until long after the decision of the Supreme Court, when at a status conference of three year old cases on September 14, 1988, plaintiffs' counsel revealed the dispute for the first time. Defendants then, as now, insisted that the matter was closed on April 15, 1985, when they named the NYSE according to the method specified by the agreement. Plaintiffs sought still another order, persisting in their contention that the selection method became operational only upon entry of another order of this court. We advised that no further order was necessary, urged the attorneys to settle their dispute by agreeing on an arbitration forum, and, if they could, to stipulate to the form of an order, and we would sign it.

The stipulation later submitted, however, simply directed plaintiffs to commence arbitration. It did not name any different arbitration forum or otherwise change the status quo. Unaware that the dispute had not been resolved, we inadvertently so ordered the stipulation on October 11, 1988. Defendants then sought to commence arbitration before the NYSE on October 25, 1988. Plaintiffs responded with an application to state court, by order to show cause, to enjoin the NYSE proceedings and to compel arbitration at the AAA, under the rules of the AMEX.[7] Defendants now seek to compel plaintiffs to commence arbitration under the rules of the NYSE, the arbitration forum that defendants named over three years ago in accordance with the method specified in the agreement.

## DISCUSSION

■ It is well to start our analysis with a reminder that, as the Supreme Court taught in this very case, arbitration is strictly a creature of contract.

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* . . . was intended to "revers[e] centuries of judicial hostility to arbitration agreements," *Scherk v. Alberto-Culver Co.,* . . . 417 U.S. [506], 510 [94 S.Ct. 2449, 2452, 41 L.Ed.2d 270] [ (1974) ], by "plac[ing] arbitration agreements 'upon the same footing as other contracts.' " 417 U.S., at 511 [94 S.Ct. at 2453], quoting H.R.Rep. 96, 68th Cong., 1st Sess. 1, 2 (1924). The Arbitration Act accomplishes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and authorizes a federal district court to issue an order compelling arbitration if there has been a "failure, neglect, or refusal" to comply with the arbitration agreement, § 4.

The Arbitration Act thus establishes a "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765] (1983), requiring that "we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Bird,* 470 U.S. [213], 221 [105 S.Ct. 1238, 1242, 84 L.Ed. 2d 158] [ (1985) ].[8]

---

6. S.D.N.Y.R. 42.

7. Plaintiffs interpret the AMEX Constitution Art. VIII, 9063, § 2(c) as enabling them to choose the AAA as its forum of choice. Known as the "AMEX Window," § 2(c) states "the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange." We need not resolve this issue.

8. *McMahon, supra,* 482 U.S. at ——, 107 S.Ct. at 2337.

"Rigorous enforcement" demands respect for a forum selection method voluntarily adopted by the parties, which should be given specific enforcement absent a strong showing of "such grounds as exist at law or in equity for" its revocation.[9] We have already found that the agreement is not a contract of adhesion,[10] and there is not the slightest contention, much less a showing, of fraud, duress, mistake, bias, or any other ground known to law or equity for revocation of the agreement.[11] The method agreed upon by the parties for naming an arbitrator is explicit and unambiguous and therefore must be given controlling effect. We have no power to change any of the terms of the agreement. "If in the agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed."[12]

Plaintiffs contend, however, that defendants' March 30, 1985 notice of intention to arbitrate and demand on plaintiffs to choose the forum was premature and improper because (1) the controversy was pending in this court and a formal motion and order to compel arbitration had not yet been made, and (2) the notice was statutorily defective on its face under N.Y.Civ.Prac. L. & R. § 7503(c) (McKinney 1980). These contentions are frivolous, and flaunt the agreement, the Arbitration Act, and the mandate of the Supreme Court.

■ Defendants' March 30 demand was neither premature nor improper because the agreed event that activates the right, and the obligation, to initiate arbitration proceedings is not the pendency of an action, nor a motion to compel arbitration, nor a court order to that effect, but the mere happening of a controversy covered by the agreement. Plaintiffs breached the agreement by filing the complaint alleging claims covered by the agreement, thereby creating an arbitrable controversy. The pendency of an action does not stay arbitration, but instead forces a demand and application by defendants to compel arbitration and *to stay the trial* pending arbitration.[13]

Nothing required either party to await a final order, or even a motion to compel arbitration before selecting an arbitrator. Plaintiffs' imposition of such a condition without an order staying the arbitration and preserving the exercise of the right to select an arbitrator, was simply a unilateral, futile, and legally unjustifiable attempt to change the terms of the agreement.

■ The April 11, 1985 response of plaintiffs' counsel to defendants' March 30, 1985 demand demonstrates his knowledge that a stay was needed to preserve plaintiffs' right to choose an arbitrator pending a challenge to the enforceability of the agreement. Yet, he never applied for a stay of any kind. Instead, he deliberately chose to stake all "upon the unlikely event of entry of a final order compelling arbitration." His mistaken prediction, however well founded, was not a preservation of plaintiffs' right to choose the forum. On the contrary, his reliance on his own misjudgment was a voluntary and knowing waiver of plaintiffs' right to choose the forum under both federal[14] and state law.[15]

---

9. "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1970).

10. *McMahon, supra*, 618 F.Supp. at 386.

11. *See* 9 U.S.C. § 2.

12. 9 U.S.C. § 5; *see also Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 516–20, 94 S.Ct. 2449, 2455–58, 41 L.Ed.2d 270 (1974).

13. *See* 9 U.S.C. § 3.

14. If a party fails to elect a forum upon demand, and the claims are deemed arbitrable, that party waives the right of election. *See Phillips v. Merrill Lynch Pierce Fenner & Smith, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 91,650, at 99,292, 1984 WL 2462 (D.Minn.1984); *see also Suarez–Valdez v. Shearson Lehman/American Express, Inc.,* No. 85–0789, slip op. at 2–3 (S.D.Fla. Sept. 29, 1987).

15. "[U]nless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with." N.Y.Civ.Prac.L. & R. § 7503(c) (McKinney 1980).

Plaintiffs' next contention, that defendants' March 30, 1985 demand did not comply with N.Y.Civ.Prac.L. & R. § 7503, is without merit. That statute requires only that a demand for arbitration be in writing and include the following: the address of the defendant, or his attorney; a statement of why arbitration is required; what in particular is to be arbitrated; and a warning that if the plaintiff does not seek a stay within twenty days, the plaintiff will lose the right to contest the arbitrability or timeliness of the dispute.[16] The notice and demand must be served either in the same manner as a summons or by registered or certified mail with return receipt requested.[17] Defendants' demand letter complied with each of these requirements.

■ Plaintiffs final contention is that the "stipulation of the parties" so ordered by this court on October 11, 1988, "clearly gives plaintiffs the right to choose a forum." The stipulated order on its face grants no such right. It provides that "this Court directs that plaintiffs' complaint be discontinued without prejudice to the commencement by plaintiffs of an arbitration to hear and decide their claims against the defendants. This action shall remain on the Court's suspense docket pending the outcome of the arbitration." [18]

There is nothing on the face of the stipulated order naming an arbitration forum different from the one already named by defendants in accordance with the agreement. Nor is there anything on the face of the order granting plaintiffs a right to cancel the selection already made, or to change the arbitration forum. All it did was order plaintiffs to commence arbitration, something they already had been ordered to do.

It was not the intention of the court to disturb the status quo. Manifestly, defense counsel had no such intention, as evidenced by his consent to the order, despite his persistent opposition from the outset. Plaintiffs' insistence that the order gives them the "right to choose the forum" is simply a restatement of their erroneous position that the arbitration must await a final order of the court. As we have demonstrated above, no order, much less a superfluous one, was ever necessary to activate the selection process under the terms of the arbitration agreement. We have no power to change the agreement, and, clearly, none to undo the past. We signed the stipulation inadvertently because we were unaware that it had not solved the dispute over the selection of a arbitration forum, contrary to our directions at the September 14, 1988 conference.[19]

The inference that plaintiffs' counsel knew that the October 11 order did not alter the status quo or give plaintiffs the right to choose the arbitration forum seems clear from his subsequent actions. Seizing upon the stipulated order, plaintiffs' counsel circumvented our jurisdiction and applied to state court for a stay of arbitration before the NYSE and to compel arbitration before the AAA. Plaintiffs' counsel claimed in state court, and repeated here, that the October 11 order "clearly gives plaintiffs the right to choose" an arbitration forum. As shown, the October 11 order "clearly" gives plaintiffs no such right.

■ The action of plaintiffs' counsel was a blatant evasion of our ongoing jurisdiction and a misleading interpretation of the order. Our jurisdiction continues pending arbitration for the purpose of confirming, vacating, modifying, or correcting any award.[20] Moreover, our jurisdiction is unaffected by suspense status. Since the state court proceedings seek to circumvent our jurisdiction, it is necessary to grant a

16. N.Y.Civ.Prac.L. & R. §§ 7503(c); C7503:10.

17. N.Y.Civ.Prac.L. & R. § 7503(c).

18. This order was a nullity because the final order of this court compelling arbitration is the one mandated by the Second Circuit. *See* S.D. N.Y.R. 42.

19. To the extent that this order had any vitality, we now vacate it. *See* Fed.R.Civ.P. 60(b).

20. 9 U.S.C. §§ 9–11.

permanent injunction in aid of our jurisdiction.[21]

*Sanctions.*

█ The conduct of plaintiffs' counsel in misinterpreting the order has caused delay, unfounded harassment, and unnecessary expense to defendants. It has also unjustly deprived defendants of their right to a swift resolution of the serious and damaging charges plaintiffs have levelled against them, defeating the essential purpose of both the agreement and the Arbitration Act. Counsel's actions also have delayed a swift resolution of plaintiffs' underlying claims and increased their expense. In short, counsel's tactics have unreasonably, vexatiously, and frivolously multiplied these proceedings, thereby justifying sanctions, including costs and fees, under 28 U.S.C. § 1927. In addition, plaintiffs' counsel has had the temerity to represent to this court that the October 11 order gives plaintiffs the right to select the arbitration forum, and has included with his affidavit his misrepresentations to state court, the NYSE, and the AAA,[22] making sanctions under Rule 11, Fed.R.Civ.P., appropriate.

We find that the misconduct of plaintiffs' counsel has inflicted excessive costs and attorney's fees on defendants, which we estimate at $1,000,[23] and we impose this sanction on plaintiffs' counsel personally, without reimbursement from his client.[24]

## CONCLUSION

Accordingly defendants' motion, which we treat as one for summary judgment seeking a final and permanent injunction, is granted and the parties are directed to settle a judgment within twenty (20) days:

(1) permanently restraining plaintiffs and state court from all further proceedings respecting plaintiffs' application to enjoin arbitration before the NYSE and to compel arbitration under the rules of the AMEX before the AAA, Docket No. 21834–88, Sandifer, J., November 7, 1988;

(2) directing plaintiffs to submit to arbitration forthwith under the rules of the NYSE; and

(3) directing plaintiffs' counsel Theodore G. Eppenstein, Esq., to pay personally, without reimbursement from plaintiffs, $500 to each defendant within ten (10) days of the entry of the settled judgment.

So Ordered.

---

**21.** Federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651 (1966). The court, however, "may not grant an injunction to stay proceedings in a State court except ... where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (1978).

**22.** The affidavit of plaintiffs' counsel filed in support of plaintiffs' application in the state court so artfully mixed facts and contentions as to convey the false impression that the October 11, 1988 order, which did not name an arbitration forum, nevertheless "clearly gives [plaintiffs] the right to choose a forum." Affidavit of Theodore G. Eppenstein, sworn to November 11, 1988, in support of order to show cause before the state court, at ¶ 14. Similarly, plaintiffs' counsel deceptively represented to the NYSE that "Judge MacMahon's October 11 1988

Order clearly gives [plaintiffs] the right to choose their forum," Letter from Eppenstein to NYSE dated October 31, 1988, at ¶ 3, and told the AAA that "The Honorable Lloyd F. MacMahon dismissed the court case without prejudice to the filing of *this* arbitration by [plaintiffs]." Plaintiffs' Demand for Arbitration and Statement of Claim to the AAA, dated October 31, 1988, at p. 2 (emphasis supplied).

**23.** To avoid ongoing litigation over the amount of sanctions, we assess an amount that we find will compensate defendants for their reasonable costs and deter future violations both by plaintiffs' counsel and generally. *See Anschutz Petroleum Marketing Corp. v. E.W. Saybolt Co.,* 112 F.R.D. 355, 357 (S.D.N.Y.1986).

**24.** *See Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684, 692–93 (S.D.N.Y.1985); 28 U.S.C. § 1927.