BEAR STEARNS & CO., INC., Petitioner,

v.

N.H. KAROL & ASSOCIATES, LTD., Nathaniel H. Karol, and Liliane L. Karol, Respondents.

No. 89 C 6909.

United States District Court, N.D. Illinois, E.D.

Nov. 15, 1989.

---

Jerold S. Solovy, Keith F. Bode and Howard S. Suskin, Jenner & Block, Chicago, Ill., for petitioner.

Robert W. Queeney, McBride Baker & Coles, Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Bear Stearns & Co., Inc. has brought a petition for an order directing N.H. Karol & Associates, Ltd., Nathaniel H. Karol and Liliane L. Karol ("Karols") to arbitrate before the National Association of Securities Dealers ("NASD"). The Karols have responded by filing a motion to stay any proceedings related to Bear Stearns' petition. For the reasons given below, we deny the Karols' motion and order the parties to submit their dispute to arbitration before the NASD.

### Procedural History

On November 25, 1987, the Karols filed an action in this court charging Bear Stearns with violations of, *inter alia*, the Securities and Exchange Act of 1934. Bear Stearns argued that the "Customer Agreement" signed by both parties granted it the right to arbitrate these claims. The arbitration clause in the parties' "Customer Agreement" provides that:

Any controversy arising out of or relating to your account in connection with transactions between us or pursuant to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc., the Board of Governors of the New York Stock Exchange, Inc., or the Board of Governors of the American Stock Exchange, Inc. as you may elect . . .

(Bear Stearns, Ex. A). The agreement also provides that Bear Stearns could elect arbitration if the Karols did not do so within five days after a demand by Bear Stearns.

In a letter dated December 18, 1987, Bear Stearns requested that the Karols make an arbitration election pursuant to the Customer Agreement. (Bear Stearns, Ex. B) The Karols responded on December 23, 1987. Their letter stated that, "[w]ithout diminishing or waiving their rights to void any such agreements to arbitrate, the Karols hereby elect to have all controversies settled in accordance with the current rules of the National Association of Securities Dealers, should any controversy be submitted to arbitration pursuant to court order, subsequent agreement of the parties or otherwise." (Bear Stearns, Ex. C)

Bear Stearns filed a motion to compel arbitration after the Karols moved to add a jury demand to the original counts of their complaint. On February 24, 1989, we ordered the parties to immediately proceed with arbitration, and dismissed the Karols' action with prejudice. *Karol v. Bear Stearns & Co., Inc.*, 708 F.Supp. 199 (N.D. Ill.1989).

On April 27, 1989, Bear Stearns received a demand to arbitrate the Karols' claims before the American Arbitration Association ("AAA"). Bear Stearns then filed a motion to stay the proceedings before the AAA and to compel arbitration before the NASD. Because we had dismissed the Karols' action with prejudice, we issued an order explaining that we lacked jurisdiction over this motion to compel. (Minute Order of August 31, 1989, Case No. 87 C 10176)

Bear Stearns subsequently filed the action which is now before this court. Bear Stearns seeks an order directing the Karols to arbitrate before the NASD, an injunction preventing the Karols from instituting or participating in any unauthorized AAA proceeding, and the costs that it incurred in bringing the petition. The Karols have responded by filing a motion to stay Bear Stearns' petition.

## Discussion

■ Bear Stearns contends that the AAA is an inappropriate forum for arbitration under the Customer Agreement. Although the Karols dispute Bear Stearns' interpretation of the contract, the Karols contend that we should not reach this issue. According to the Karols, the issue of whether they have chosen a proper forum for arbitration is an issue properly decided by the arbitrator rather than the court. However, we find that this issue is appropriate for judicial consideration.

The mandate of prior judicial interpretation of the scope of an arbitrator's power compels this conclusion. In *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court discussed the breadth of an arbitrator's power in the context of a dispute over whether a collective bargaining agreement provided for arbitration of certain employment grievances. The Court explained that arbitration is a matter of contract. *Id.* 106 S.Ct. at 1418. Therefore, the sole source of the arbitrator's power is the agreement of the parties to submit a dispute to arbitration. *Id.* Furthermore, the Court explained the question of arbitrability is "undeniably an issue for judicial determination." *Id.*

These principles are echoed in scores of other cases. For example, in *Intern. Ass'n of Machinists, Lodge No. 1000 v. GE*, 865 F.2d 902 (7th Cir.1989), the Seventh Circuit interpreted an arbitration clause of a collective bargaining agreement. The Court emphasized that arbitration is a "creature of contract." *Id.* at 904. The Court went on to state that, with few exceptions, "the arbitrator is not the judge of his own authority." *Id.* *See also, I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d 396, 399 (8th Cir.1986) ("any power that the arbitrator has to resolve the dispute must find its source in a real agreement between the parties. He has no independent source of jurisdiction apart from the consent of the parties."); *Graphic Communications Union v. Chicago Tribune*, 794 F.2d 1222, 1225 (7th Cir.1986) (arbitrators have power only because parties have determined to submit a grievance to arbitration); *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 ("No one should be forced into arbitration without an opportunity to show that he never agreed to arbitrate the dispute that is the subject of arbitration.")

The issue of whether a grievance is before a proper arbitration forum is appropriate for judicial resolution. Because the arbitrator has no power beyond the agreement of the parties, an arbitrator who is improperly elected has no power to resolve a dispute between the parties. Similarly, because an arbitrator can not be the judge of his own authority, *Intern. Ass'n of Machinists, Lodge No. 1000*, 865 F.2d at 904, a challenge to his jurisdiction over a dispute may be heard in the judicial system.

This conclusion is bolstered by the language of the Federal Arbitration Act. 9 U.S.C. § 1 *et seq.* For example, § 4 of the act, which allows for judicial intervention when a party has failed to arbitrate under an agreement, provides:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed *in the manner provided for in such agreement* ... (emphasis added)

9 U.S.C. § 4. This provision allows a party to petition for a court order when there has been a failure to arbitrate in the manner

provided for in the agreement. Clearly, the failure to adhere to the forum selection clause of an arbitration agreement is such a failure. Moreover, § 5 of the Act provides that, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or umpire, such method shall be followed ..." Thus the act itself, whose provisions we are empowered to enforce, requires adherence to forum selection provisions in arbitration agreements.

Thus, we conclude that both the judicial definition of the powers of arbitrators and the language and policies of the Federal Arbitration Act empower us to determine whether the Karols have breached their agreement with Bear Stearns by electing to arbitrate before the AAA. Accordingly, we now turn to this issue.

■ On its face, the agreement provides for arbitration before three forums; the NASD, the New York Stock Exchange and the American Stock Exchange. Nevertheless, the Karols argue that the agreement entitles them to arbitrate before the AAA. They base this argument on their interpretation of certain language in the customer agreement which provides that any controversy between the parties shall be settled in accordance with the *"rules, then in effect, ...* of the Board of Governors of the American Stock Exchange." (emphasis added). The Karols contend that the rules of the American Stock Exchange (AMEX) should be interpreted to include a provision of the AMEX constitution which would seemingly provide for arbitration before the AAA.

We reject the Karols' argument that arbitration before the AAA is appropriate under the Customer Agreement. First, we find that the Karols made a binding election to arbitrate their dispute with Bear Stearns before the NASD. Second, we find that the reference in the Customer Agreement to the "rules" of the AMEX does not encompass the AMEX constitution.

As stated earlier, the Federal Arbitration Act provides that where provision is made for the "method of naming or appointing an arbitrator ... such method shall be fol-

lowed." 9 U.S.C. § 5 (1983) quoted in *McMahon v. Shearson/American Exp., Inc.*, 709 F.Supp. 369, 373 (S.D.N.Y. 1989). Any contract provision designating settlement by arbitration, furthermore, "shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1983), quoted in *Shearson American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). The Act, in effect, puts arbitration agreements "upon the same footing as other contracts." *Id.*, quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924).

In *McMahon*, the district court upheld an arbitration election under a provision almost identical to the provision in the Bear Stearns Customer Agreement. The customers in *McMahon* failed to elect an arbitrator within the five day limit. The brokerage firm then exercised its right to elect the New York Stock Exchange. The customers, however, raised the same argument forwarded by the Karols in this case and attempted to compel arbitration before the AAA under the rules of the AMEX. 709 F.Supp. at 372. However, the Court chose not to consider the AAA issue and held that the customers were bound to arbitrate before the NYSE. The Court relied on §§ 2 and 5 of the Arbitration Act and held that the agreement for naming the arbitrator was "explicit and unambiguous" and not induced by "fraud, duress, mistake, [or] bias ..." and was therefore enforceable. *Id.*, at 373.

We find the reasoning and holding of *McMahon* applicable to this case. Through their December 23, 1987 letter, the Karols freely and willingly elected to arbitrate before the NASD. They have given no persuasive justification to avoid this election. The Karols claim that the election is voidable because they were unaware of the option to arbitrate before the AAA. We conclude below that they did not have this option. However, even if we were to conclude otherwise, the Karols have given us

no explanation as to why they were not aware of an option which they now contend is clearly provided for by the Customer Agreement and the rules and constitution of the AMEX.

■ As we have just concluded, the Karols' election to arbitrate before the NASD precludes any proceedings before the AAA. However, even if the Karols' election were not binding, the Customer Agreement does not provide for arbitration before the AAA. The Karols contend that the reference in the Customer Agreement to the "rules" of the AMEX encompasses the AMEX constitution. According to the Karols, the AMEX constitution provides them with the right to elect the AAA to arbitrate the dispute.

Specifically, the Karols contend that AMEX constitution, Article VIII, ¶ 9063, § 2(c) gives them the right to arbitrate before the AAA. Section 2(c) provides that: "[a]rbitration shall be conducted under the arbitration procedures of this Exchange, except as follows ... if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange." 2 Am.Stock Ex.Guide (CCH) ¶ 9063 (1984).

The Karols assume that the AMEX constitution is a "rule," as this term is used in the Bear Stearns customer agreement. However, this argument has been rejected by courts in identical factual contexts. In *Hybert v. Shearson Lehman/American Express, Inc.*, (slip op.) 1989 WL 64450 1989 U.S.Dist. LEXIS 6656 (N.D.Ill.1989), the plaintiff customers entered into an agreement with an arbitration provision virtually identical to the Bear Stearns agreement involved in the present case. The customers attempted to arbitrate their claims before the AAA, citing § 2(c) of the AMEX constitution.

The Court flatly rejected this argument for two reasons. First, the Court held that the reference to "rules" in the arbitration provision was intended to embrace the arbi-

tration provisions of the three exchanges; the AMEX constitution was not within the scope of the "rules" referenced in the provision. Second, the Court held that even if the drafters of the contract intended to embrace the AMEX constitution in their reference to the AMEX rules, the language of § 2(c) precluded its application. The Court explained that the words "unless the customer has expressly agreed in writing to submit only to the arbitration procedure of the exchange" meant "unless the customer has expressly agreed in writing to submit only to specified arbitration forums." In other words, § 2(c) is only applicable when customers enter into very general arbitration agreements with AMEX members. The agreement involved in *Hybert*, which is identical to the provision at issue here, was the type of specific contract which fell outside the scope of § 2(c).

In *Painewebber, Inc. v. Pitchford*, 721 F.Supp. 542 (S.D.N.Y.1989) the parties were bound by an arbitration provision virtually identical to the provision at issue here. The customers argued that § 2(c) of the AMEX constitution afforded them the right to arbitrate before the AAA. As was the case in *Hybert*, the court rejected this interpretation of § 2(c) and the arbitration contract.

The court found that the agreement did not include a right to arbitrate before the AAA. "We ... conclude that the references to the 'rules' means the arbitration procedures of the three electable organizations, and not their constitutions. It is certainly more logical to assume that the forums named in the arbitration clause are the only electable forums intended by the parties. The agreement was specifically limited to these forums. Accordingly, if we held that constitution of the AMEX is a 'rule,' we would be creating a fourth electable forum, a result we believe was not envisioned by either the drafters of the clause or the parties." *Id. See also, Piltch v. Merrill Lynch, Pierce, Fenner & Smith*, 714 F.Supp. 537, 538 (D.D.C.1989).

We find the reasoning of these cases to be persuasive, and conclude that the Customer Agreement was not intended to en-

504

compass the AMEX constitution. Rather, the forum selection language in the contract was intended to specify three proper forums for arbitration. Furthermore, we find that the agreement signed by the Karols constitutes an express agreement to submit a dispute only to the arbitration procedures of the three exchanges. Therefore, the agreement is beyond the scope of § 2(c).

### Conclusion

For the reasons stated above, we order the parties to immediately proceed to arbitration before the National Association of Securities Dealers. Because the AAA has indicated that it will abide by our order, injunctive relief is inappropriate at this time. (See Bear Stearns, Ex. G). Finally, because there are insufficient facts to suggest that the Karols' actions were not grounded in a good faith attempt to extend or modify existing law, we decline to award sanctions. It is so ordered.