**Eugene McMAHON & Julia A. McMahon, individually and as Trustees of the David J. Hodder & Son, Inc. Employee Pension Plan, The David J. Hodder & Son, Inc. Profit Sharing Plan, The Laurie Funeral Home, Inc. Employee Pension Plan, The Laurie Funeral Home Profit Sharing Plan, Plaintiffs,**

**Theodore G. Eppenstein, Plaintiff–Appellant,**

v.

**SHEARSON/AMERICAN EXPRESS, INC., and Mary Ann McNulty, Defendants–Appellees.**

**No. 77, Docket 89–7222.**

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1989.

Decided Feb. 14, 1990.

18

Theodore G. Eppenstein (Eppenstein & Eppenstein, Madelaine Eppenstein, of counsel), New York City, for plaintiff-appellant.

Jeffrey L. Friedman (Shearson Lehman Hutton Inc., Office of the Gen. Counsel, Theodore A. Krebsbach, of counsel), New York City, for defendants-appellees.

Before FEINBERG and CARDAMONE, Circuit Judges, and

METZNER, District Judge *.

CARDAMONE, Circuit Judge:

This appeal is taken by an attorney against whom sanctions were imposed. It arises out of the landmark Supreme Court decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). There the Court held that a predispute arbitration provision in a broker/investor agreement requires the investor to submit to arbitration any claims arising under the agreement, including those otherwise governed by the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) (1982) (Exchange Act). *Id.* at 238, 107 S.Ct. at 2343; *see also Rodriguez De Quijas v. Shearson/American Express, Inc.,* — U.S. ——, 109 S.Ct. 1917, 1919–21, 104 L.Ed.2d 526 (1989) (claims arising under Securities Act of 1933 arbitrable). To understand the context in which the sanctions at issue were imposed, it is necessary to describe briefly the history of this litigation.

## BACKGROUND

### A. *History of Litigation*

Eugene and Julia McMahon, individually and as trustees for various profit sharing and pension plans, brought suit in 1984 alleging that Shearson and its representative, Mary Ann McNulty (McNulty), engaged in fraudulent, excessive trading on plaintiffs' accounts and gave them investment advice that contained false statements and that omitted material facts. The McMahons' complaint alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), claimed damages under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (1982) (RICO), and asserted state law claims for fraud and breach of fiduciary duties.

When the McMahons opened their accounts with Shearson, Julia McMahon signed two customers' agreements. Each contained the same arbitration provision governing any controversy relating to the accounts:

[A]ny controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within 5 days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

In 1985, after an amended complaint had been filed, Shearson sent a letter to the McMahons' former counsel stating that it intended to file a motion to compel arbitration, and that the McMahons should elect, pursuant to the just recited provision, in which forum they wanted their claim arbitrated. At the time when the letter was sent the settled law in this Circuit deemed such arbitration clauses unenforceable. Hence, the McMahons' counsel answered Shearson's letter by stating that the demand for an election was premature inasmuch as the arbitration clause was legally unenforceable, and that his clients would make a forum election if and when the district court issued an order compelling arbitration. Shearson responded that since the McMahons failed to make an election within five days of demand, it chose as the arbitration forum the New York Stock Exchange (NYSE).

Shearson then moved to compel arbitration pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (1982). The district court granted the motion with respect to the Exchange Act and state law claims, but denied arbitration of the RICO claims. *McMahon v. Shearson/American Express,*

---

* Hon. Charles M. Metzner, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

*Inc.,* 618 F.Supp. 384 (S.D.N.Y.1985). Plaintiffs retained their present counsel, Eppenstein & Eppenstein, who brought an appeal before us. We affirmed the order compelling arbitration on the state law claims, but ruled that the Exchange Act claims were not subject to compulsory arbitration. *McMahon v. Shearson/American Express, Inc.,* 788 F.2d 94 (2d Cir.1986). The Supreme Court—to which appellant Eppenstein brought and argued an appeal —reversed, holding that claims arising from predispute arbitration agreements under the Exchange Act are arbitrable. *McMahon,* 482 U.S. at 238, 107 S.Ct. at 2343–44.

### B. *Present Controversy*

With that background, we now turn to the events that prompted the imposition of sanctions. On remand to the district court for further proceedings in light of the Supreme Court's decision, the issue of the election of the arbitral forum was renewed. Shearson claimed that the parties were bound by its 1985 election of the NYSE. The McMahons claimed Shearson's prior election was not valid because the law at that time did not require investors to arbitrate their claims, hence there was no obligation to select a forum. At a status conference held in September 1988 the parties advised Judge MacMahon of the dispute, and he declined to resolve it, instead directing the parties to reach agreement on the issue and submit an order for his signature.

Attorney Eppenstein accordingly drafted an order and sent it to Shearson's counsel, Jeffrey Friedman, for his approval. On October 3, 1988 Eppenstein sent the draft order that the parties had agreed upon to Judge MacMahon, who signed and entered it on October 11, 1988. The order directed that "plaintiffs' complaint be discontinued without prejudice to the commencement by plaintiffs of an arbitration to hear and decide their claims against the defendants."

Despite its knowledge of the terms of the order then pending before the district court—ostensibly giving the McMahons an election of forum—Shearson nonetheless commenced an arbitration proceeding on October 7, 1988 before the NYSE. On October 31, 1988 Eppenstein commenced an arbitration on his clients' behalf at the American Arbitration Association (AAA). Although the AAA was not a forum listed as an option in the arbitration clause, the McMahons asserted they had the right to choose it due to a provision in the Constitution of the American Stock Exchange, Art. VIII, ¶ 9063, § 2(c). Known as the "AMEX Window," § 2(c) states "the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange."

In order to protect his clients' right to elect the AAA as the arbitral forum, Eppenstein sought a stay of the NYSE arbitration. Because Judge MacMahon had previously refused to rule on this issue, counsel filed an *ex parte* motion in New York State Supreme Court for an order to show cause why, under New York CPLR 7503, the NYSE arbitration should not be permanently stayed and the parties' disputes resolved by the AAA.

Shearson responded by filing an order to show cause in the district court, seeking to enjoin the state court action and the AAA arbitration. When Eppenstein was notified that the district court was going to entertain the forum issue, he agreed to postpone the state court proceedings. In an affidavit filed in the district court he stated that the October 11, 1988 order directed *plaintiffs* to file the arbitration, and that the state court proceeding was commenced based upon Eppenstein's understanding that the district court had declined to rule on the choice of forum issue.

Hearings were held in the district court in November 1988 on the issue of the appropriate forum for arbitration. In February 1989 Judge MacMahon ruled that Shearson properly exercised its right to elect a forum in 1985. *McMahon v. Shearson/American Express, Inc.,* 709 F.Supp. 369 (S.D.N.Y.1989). The district judge permanently enjoined the state court proceedings and directed the McMahons to submit

to arbitration at the NYSE. In addition, the district court assessed sanctions in the amount of $500 to Shearson and $500 to McNulty against Eppenstein personally—without reimbursement from his clients—pursuant to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 (1982). The sanctions were based on "misrepresentations" in appellant's affidavit that the October 11 order gave plaintiffs the right to choose the forum. It is from this sanction order that Eppenstein appeals. We reverse.

## DISCUSSION

### I  Rule 11 Sanctions

### A.  Purpose of Rule 11

Over the last several decades burgeoning and voluminous discovery requests of dubious merit with attendant escalation of needless costs made the prospect of a *Jarndyce v. Jarndyce* mentality in modern American litigation a distinct possibility, with lawyers engaged in "stages of an endless cause, tripping one another up on slippery precedents, groping knee deep in technicalities, running their ... heads against walls of words, and making a pretense of equity with serious faces, as players might." C. Dickens, *Bleak House*, 12–13. In 1983 when Rule 11 was amended the advisory committee note explained the purpose of the amendment in these words: "Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11 advisory committee's note, *reprinted at* 97 F.R.D. 165, 198 (1983).

■ Although other goals for the imposition of sanctions under Rule 11 may exist, for example, punishment for violation of the Rule, compensation for victim of the violation, and deterrence of others, focus should be on the drafters' aim of discouraging dilatory and abusive litigation tactics and eliminating frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process. Sanctions are the deterrent threat, *see id.* at 198, 199, by which a district court judge may deal with counsel who ignore their broadened responsibility under the amended Rule to forward the effective administration of justice.

### B.  Scope of Review Under Rule 11

Rule 11 provides that the signature of an attorney on a "pleading, motion, or other paper" filed in the federal court represents that

> to the best of [the signer's] knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

■ The standard of appellate review of Rule 11 decisions depends on what aspect of Rule 11 is under review. *See Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 669 n. 1 (2d Cir.1989). Whether the sanction in this Circuit was imposed for an unmerited legal argument or for not being well grounded in fact affects the standard of review. Factual findings underlying the imposition of sanctions are reviewed under the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a). Discerning whether a legal basis exists for the position taken is reviewed *de novo*. The amount and nature of the sanction is reviewed under the abuse of discretion standard. *See Official Publications*, 884 F.2d at 669 n. 1. We recognize that other Circuits reject three different sorts of review and—because of the district court's closer proximity to counsel's activities and its enhanced perspective—apply instead a single abuse of discretion standard. *See, e.g., Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 871–73 (5th Cir.1988); *Adams v. Pan Am. World Airways, Inc.*, 828 F.2d 24, 32 (D.C. Cir.1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). *See generally* Vairo, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 225–27 (1988) (discuss-

ing findings of the district court and standard of appellate review). We do not.

Thus, since this case presents a question of whether Eppenstein's interpretation of the October 11, 1988 order was objectively reasonable as a matter of law, *de novo* review is appropriate. *See Greenberg v. Hilton Int'l. Co.*, 870 F.2d 926, 934 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2d Cir.1985) (when question is whether papers or pleadings are warranted under the law, we are in as good a position as the district court to determine the answer), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

■ The Rule does not license a district court to sanction any action by an attorney or party that it disapproves of. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1268 (2d Cir.1987); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986) ("Rule 11 is not a panacea intended to remedy all manner of attorney misconduct"). Imposition of sanctions must be based on a pleading, motion or other paper signed and filed in federal court, including, as here pertinent, an attorney's affidavit. *See* Fed.R.Civ.P. 11; *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). The former standard of the subjective good faith of the attorney has been abandoned under the 1983 amendment of the Rule in favor of an "objective standard, focusing on what a reasonably competent attorney would believe." *Greenberg*, 870 F.2d at 934; *see also Eastway*, 762 F.2d at 253.

### C. Rule 11 Sanctions in This Case

■ We review this matter with the purposes of the Rule and the scope of review in mind. It is not clear from Judge MacMahon's opinion which of appellant's affidavits the judge thought violated Rule 11. We therefore analyze both Eppenstein's Affidavit In Opposition to Defendants' Application for An Order to Show Cause (Affidavit in Opposition to Show Cause Order) and his Affidavit In Opposition to Defendants' Application for Preliminary Injunctive and Other Relief (Affidavit in Opposition to Preliminary Injunction) to see if the representations they contain are objectively reasonable. The former affidavit quotes directly from the portion of Judge MacMahon's order directing *"the commencement by plaintiffs of an arbitration."* The order was annexed to the affidavit as an exhibit. It is difficult to understand how appellant's three-page Affidavit in Opposition to Show Cause Order can be deemed a "misrepresentation" when it uses the exact language of the district court's order.

Next we are unconvinced that the representations Eppenstein made that the October 11 order gave plaintiffs the right to commence arbitration in the forum of their choice, set forth in his letter to the NYSE and in his demand for arbitration before the AAA, both of which are annexed as exhibits to his Affidavit In Opposition to Preliminary Injunction, warrant Rule 11 sanctions. It does not strike us that counsel's interpretation of the order as permitting plaintiffs to choose their forum was objectively unreasonable. The order's plain language directs plaintiffs to commence the arbitration. Given that the district court refused to provide any guidance as to the arbitral forum, Eppenstein was justified in interpreting the order to give his client the right of election.

■ Rule 11 is not intended to chill an attorney's creative, imaginative or enthusiastic advocacy on his client's behalf. So long as his pleadings meet the test of reasonableness and are not interposed for what the amendment identifies as improper purposes—that is to say, counsel's actions are not a dilatory or abusive tactic designed simply to delay, harass or cause his adversary needless expense—sanctions are not warranted. *See* Fed.R.Civ.P. 11 advisory committee's note; *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir.1988). Consequently, Eppenstein's representation that his clients had the right to commence arbitration in the forum of their choice was a plausible legal interpretation of the October 11 order. Hence, it did not violate Rule 11.

■ Further, the district court also objected to "misrepresentations" of its October 11 order that were presented in appellant's papers filed in the state court proceeding and with the NYSE and AAA. 709 F.Supp. at 375 n. 22. Although the same affidavit used in the state court proceeding is annexed as an exhibit to Shearson attorney Friedman's affidavit, it was not filed in the district court by appellant. Since by its terms Rule 11 only applies to papers filed in federal court, *see Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir.1987), it provides no basis for sanctioning an attorney for papers filed in a state forum. The fact that opposing counsel included as an exhibit to his affidavit Eppenstein's state court filing does not subject Eppenstein to Rule 11 sanctions.

## II  *Sanctions Under § 1927*

■ The other ground upon which counsel was sanctioned was under 28 U.S.C. § 1927, which provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions awarded pursuant to § 1927 are reviewed under an abuse of discretion standard. *See Apex Oil Co. v. Belcher Co.*, 855 F.2d 1009, 1020 (2d Cir.1988); *In re TCI Ltd.*, 769 F.2d 441, 448 (7th Cir.1985).

■ Unlike Rule 11's "objectively unreasonable" test, § 1927 sanctions are properly imposed only upon a " 'clear showing of bad faith' " on the attorney's part. *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010 (2d Cir.1986) (quoting *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971)). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have

been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273.

■ Thus, we must examine whether Eppenstein's actions in applying to the state court for a stay, triggering additional proceedings in the district court, were "vexatious." We begin with the conceded fact that the district court judge declined to entertain the issue of the proper arbitral forum. An affidavit filed by Shearson's attorney states "Your Honor directed the parties to submit a proposed order directing arbitration. Your Honor was also advised that the parties had a dispute as to which arbitral forum was to resolve their claims, however, this issue was not entertained." Attorney Friedman also stated at the November 14, 1988 hearing on this issue that "you [Judge MacMahon] have never given any indication and have never entertained the issue as to the proper arbitration forum."

Next, Eppenstein was warranted from the language of the order (which he had drawn and submitted to the district judge) in believing that his client had the right to elect the arbitral forum. Shearson's counsel, after agreeing to the form of an order to be submitted to the court directing plaintiffs to commence the arbitration, thereafter attempted to nullify plaintiffs' right of election by commencing arbitration himself in a different forum. Examining appellant's alternatives for preserving his clients' right to choose a forum, we conclude that his choices were limited. One was a return to federal court—where the judge had already refused to rule. Another was to seek relief from state court, pursuant to a New York statute governing arbitration.

Appellant chose the latter course of action. The decision to involve the state court in the dispute was perhaps unorthodox, but under the circumstances we do not think it may be characterized either as subterfuge or an attempt to evade the jurisdiction of the federal court. While the state court proceeding necessarily forced the opposing party to expend time, effort and money, that factor alone certainly cannot

make it sanctionable so long as it was a good faith attempt to preserve what counsel believed to be his clients' right to choose an arbitral forum. Any action taken on behalf of one's client during litigation generally causes an opposing party to expend time and money.

Moreover, it may fairly be said that Shearson's actions—more than appellants—unreasonably and vexatiously multiplied these proceedings. Shearson, after all, commenced arbitration contrary to the terms of the court order it had agreed upon. Consequently, we conclude that Eppenstein's action was not taken in bad faith, and that imposing sanctions under § 1927 was an abuse of the district court's discretion.

### III  *Appellate Court Sanctions*

■ Finally, appellees argue that the present appeal is frivolous and move for an award of sanctions pursuant to Fed.R. App.P. 38 (Rule 38). Rule 38 provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." The outcome of this appeal refutes appellees' argument. Again, just as the decision to appeal should not be a "knee-jerk-reaction to every unfavorable ruling," *Simon & Flynn, Inc. v. Time, Inc.*, 513 F.2d 832, 835 (2d Cir.1975), so a motion for sanctions under Rule 38 should not be a reflex response when served with an appellant's brief. The request in the instant appeal is particularly inappropriate because, as noted, appellees' actions vexatiously multiplied the proceedings at the trial level. Litigants should think twice before engaging in satellite litigation regarding sanctions because to do so contravenes the very spirit of Rule 11, Rule 38 and § 1927, all of which are aimed at eliminating baseless litigation. *Cf. Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir.1986) (noting the " 'Kafkaesque dream' of courts being besieged by motions to sanction attorneys for making frivolous motions for sanctions."). In making a Rule 38 motion in this case, counsel revealed a woeful lack of understanding of the increased personal respon-sibility imposed upon each individual attorney under these salutary rules. *Cf. Pavelic & LeFlore v. Marvel Entertainment Group*, —— U.S. ——, 110 S.Ct. 456, 458–59, 107 L.Ed.2d 438 (1989).

### CONCLUSION

Accordingly, the order directing the imposition of sanctions is reversed and vacated. Appellees' motion for Rule 38 sanctions is denied.