**WEST INDIAN SEA ISLAND COTTON ASSOCIATION INCORPORATED, the Government of Barbados, the Government of Antigua and Barbuda, the Government of Montserrat, Caribbean Sea Island Cotton Co., Ltd. and Sea Island Cotton Fabrics and Fashions Ltd., Plaintiffs,**

v.

**THREADTEX, INC., Sea Island Cotton Growers Ltd. and Bernard Richman, Defendants.**

**No. 89 Civ. 7895 (RJW).**

United States District Court,
S.D. New York.

April 9, 1991.

Gilbride, Tusa, Last & Spellane, New York City (Bennett H. Last, Eric H. Seltzer, Jay B. Solomon, Eden L. Rohrer, of counsel), for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Cameron Clark, Conna A. Weiner, Brian H. Havel, of counsel), for defendants.

ROBERT J. WARD, District Judge.

Defendants Threadtex, Inc. ("Threadtex"), Sea Island Cotton Growers Ltd. ("Growers"), and Bernard Richman ("Richman") move, pursuant to Rule 56, Fed.R. Civ.P., for summary judgment dismissing the complaint in the above-captioned action. Defendants further move, pursuant to Rule 12(c), Fed.R.Civ.P., to dismiss claims fifteen and sixteen of the complaint, and to dismiss the entire complaint as against Richman for failure to state a claim upon

which relief may be granted. Both parties seek sanctions pursuant to Rule 11, Fed.R. Civ.P. For the reasons that follow, defendants' motion is granted in part and denied in part. Plaintiffs' application for Rule 11 sanctions is denied, and defendants' application for sanctions is granted in part.

## BACKGROUND

Plaintiff West Indian Sea Island Cotton Association ("WISICA") is a corporation organized under the laws of Antigua. According to plaintiffs, WISICA is an incorporated association of representatives of growers of a certain type of cotton known as "Sea Island cotton," including the governments of nations which produce Sea Island cotton. Plaintiffs Caribbean Sea Island Cotton Co., Ltd. ("Carsicot") and Sea Island Cotton Fabrics and Fashions Ltd. ("Seacot") are corporations which were formed in August and September of 1989, respectively, and which are organized under the laws of Barbados. Plaintiffs claim that Carsicot is engaged in the business of marketing lint, yarn, textiles and finished products made from Sea Island cotton, and that Seacot is in the business of manufacturing and selling fabrics and piece goods made from Sea Island cotton. Plaintiffs The Government of Barbados ("Barbados"), The Government of Antigua and Barbuda ("Antigua"), and The Government of Montserrat ("Montserrat") are the governments of West Indian islands in which Sea Island cotton is grown, and are members of WISICA.

Defendant Threadtex is a New York corporation which markets and sells textiles, fabrics and piece goods. Defendant Growers is a New York corporation formed by Threadtex. Defendant Richman, a citizen of the state of New York, is the President and majority shareholder of Threadtex.

The gravamen of plaintiffs' complaint in the instant action concerns defendants' use of the term "Sea Island cotton" to describe products undisputedly made from Egyptian Giza 45 cotton. Plaintiffs assert that "[i]t is improper, misdescriptive and deceptive to describe Egyptian Giza 45 cotton as Sea Island Cotton." Plaintiffs' Statement Pursuant to Local Rule 3(g) ("Plaintiffs' 3(g) St."), filed July 2, 1990, at ¶ 23. Defendants counter that it is entirely accurate and proper to label their Egyptian cotton "Sea Island cotton."

Certain facts are not disputed. In 1963, WISICA registered in the United States a certification mark for use on goods made from fine long staple West Indian cotton. That mark consisted of an island with two palm trees enclosed in a double rectangle surrounding the words "Certified by West Indian Sea Island Cotton Association (Inc.)." Above the island, the words "Sea Island" appeared, and below the island was printed "WISICA." In February 1983, the mark was not renewed and it therefore lapsed.

Threadtex applied in May 1983 to register a logo mark consisting of an island with two palm trees enclosed in a double oval surrounding the words "SEA ISLAND COTTON." In connection with its application to register this logo, Threadtex represented to the Patent and Trademark Office ("PTO") examiner that it believed that WISICA had abandoned its mark, and that no other person had the right to use the mark that it sought to register. Threadtex further told the PTO examiner that the cotton which it sold was "genuine Sea Island cotton." Plaintiffs claim that both of these statements were false and misleading. Defendants insist that both were entirely true and accurate. In any event, it is undisputed that the logo ultimately registered with the PTO did not contain the words "Sea Island Cotton," [1] but instead substituted the words "imported cotton fabric."

In July 1984, during the pendency of

---

1. Registration of the mark containing the words "Sea Island cotton" was refused, in part, because

The term "Sea Island" applied to cotton fabric, appears to be a generic identifier for the finest grade of cotton, obtained from plants grown on islands off the southern coast of

Threadtex's application for registration of the above-described logo, WISICA filed an application to register its previously expired certification mark. While WISICA's application was pending, Threadtex's logo was approved and was published for opposition. No party opposed the mark, and it was thereafter registered on July 9, 1985. In November 1985, WISICA's certification mark was published for opposition. Threadtex filed a notice of opposition with the Trademark Trial and Appeal Board (the "TTAB"), stating that it was a United States supplier of Sea Island cotton and fabric, that it believed that WISICA was no longer in existence, and that Sea Island cotton was no longer grown in commercial quantities in the West Indies. Ultimately, after WISICA failed to respond to interrogatories served by Threadtex, the TTAB granted Threadtex's motion pursuant to Rule 37, Fed.R.Civ.P. and sustained its opposition to the registration of WISICA's certification mark. WISICA did not seek reconsideration of this judgment, nor did it seek judicial review.

Also in November 1985, an English subsidiary of Threadtex brought a proceeding in the Office of the Secretary of State for Trade and Industry in Great Britain (the "British proceeding") seeking to cancel WISICA's certification mark in the United Kingdom on the grounds of abandonment. In April 1988, a decision was rendered denying Threadtex's application to strike the certification mark and stating that it was improper for Threadtex to label its Egyptian cotton "Sea Island cotton."

Plaintiffs claim that, although the registration of WISICA's U.S. certification mark lapsed in 1983, products made of West Indian Sea Island cotton and products utilizing the WISICA certification mark have been continuously sold in the United States and are presently being sold in this country. In addition, plaintiffs assert that Seacot is currently selling and marketing WISICA certified products in the United States, and that Seacot and Carsicot are presently attempting to sell and market West Indian Sea Island yarn and fabric in the U.S.

Defendants hotly contest these factual assertions. They insist that "plaintiffs have not engaged in any commercial activity relating to cotton in the United States within memory." Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint and for Sanctions ("Defendants' Memorandum"), filed April 3, 1990 at 2. In support of this contention, defendants cite statistics suggesting that West Indian cotton production has been "declining or minimal and erratic." *Id.* at 9. Defendants further offer the affidavit of Richman, who is "unaware of a single effort by any plaintiff to promote, advertise, certify or sell Sea Island cotton in the United States during the last 30 years." *Id.* at 11 (citing Affidavit of Bernard Richman, filed April 3, 1990 ("Richman Aff.")). Finally, defendants cite the affidavit of James O.J. Nurse ("Nurse"), an Agricultural Economist with expertise in the area of Caribbean agricultural production, who states that he is unaware of any West Indian cotton being exported to the United States, with the exception of a single shipment to Threadtex in 1987.

In response to defendants' assertions of inactivity on plaintiffs' part, and in opposition to the motion for summary judgment, plaintiffs have submitted several affidavits. Clifton E. Maynard ("Maynard"), Managing Director of Carsicot and formerly Permanent Secretary of the Ministry of Agriculture of the Government of Barbados, states that:

> From personal experience as Permanent Secretary of the Ministry of Agriculture of the Government of Barbados and a Managing Director of Carsicot, I know that WISICA has continuously certified

Georgia, in South Carolina and the Barbados. Given this usage, it is difficult to envision appropriation of the term by any one manufacturer or producer of fabrics made from this type of cotton, the term being available, indeed, required to indicate information about the grade of cotton used in producing the fabrics.

Exhibit D to Complaint, filed November 29, 1989.

West Indian Sea Island Cotton and made its certification mark available to users of genuine Sea Island Cotton. Products made from that Sea Island Cotton have been sold throughout the world, including the United States. Sales have been limited by the scarcity of the product and by the activities of Defendants, but there have always been sales and attempted sales in the United States.

Affidavit of Clifton E. Maynard ("Maynard Aff."), filed July 2, 1990 at 16. Maynard notes that the statements of Nurse are not to the contrary, as plaintiffs do not purport to export cotton lint to the United States. Rather, as Maynard explains, the lint is exported to nations, such as Japan, which possess the required machinery to spin it into high quality Sea Island cotton yarn. That yarn, according to plaintiffs, is then made into fabrics by mills in Japan and elsewhere, and those fabrics are thereafter used to make finished or piece goods in various countries, including the United States. Plaintiffs assert that fabrics and finished piece goods derived from West Indian Sea Island cotton are sold in the United States and are often certified by WISICA.

Elkin Leroy Ward ("Ward"), the President of WISICA and a farmer whose crops include Sea Island Cotton, states in his Declaration that the WISICA certification mark has been used continuously in the United States since at least 1960. Ward asserts that in 1967 he was employed by the Barbados Government and was responsible, *inter alia*, for the revitalization of the Sea Island cotton industry in the Caribbean. In this capacity, he participated in a marketing and promotion campaign by WISICA on behalf of growers of Sea Island Cotton. According to Ward, as a result of these efforts the Sea Island cotton industry expanded, and since 1972 production has been continuous. He states that although production declined during the period 1979 to 1984 due to a decrease in market price, since 1984 growth and sales have been consistent and significant.

Plaintiffs also offer the Declaration of Peter Derek Martin ("Martin"), a partner in the London firm of Solicitors Osmond Gaunt & Rose and a member of the Advisory Committee of WISICA. As a member of WISICA's Advisory Board, Martin is responsible for authorizing the use of the WISICA certification mark by companies selling West Indian Sea Island cotton. Martin states that many of the certified users of West Indian Sea Island cotton have requested permission of the Advisory Board to sell their products bearing the WISICA mark in the United States.

John Motter ("Motter"), an employee of Seacot responsible for the marketing and sales of its Sea Island cotton products in the United States and elsewhere, states in his Declaration that "Seacot is presently offering for sale in the United States yarn made entirely of Sea Island cotton and textiles and fabrics made wholly from Sea Island cotton. Those products bear the [WISICA] certification mark...." Declaration of John Motter, annexed as Exhibit F to the Maynard Aff., at 1. According to Motter, he is personally aware that there have been sales of finished products made of "genuine" Sea Island cotton in the United States in addition to his own sales and marketing activities. Motter states, for example, that in the fall of 1989 he saw men's dress shirts containing the WISICA certification mark for sale at Saks Fifth Avenue in New York City. *Id.* at 2.

It is undisputed that, in or about May 1985, while Threadtex's logo registration application was still pending before the PTO, Michael A. Cornman ("Cornman"), trademark counsel to Threadtex, sent a letter to R.H.Macy & Co. which stated in part:

It has been brought to our client's attention that Macy's is selling shirts which bear hangtags having the legend "West Indian Sea Island Cotton" thereon and bearing an island and palm trees logo with [a registered trademark] symbol thereon....

We believe that the use of the aforementioned "West Indian Sea Island Cotton" hangtags on your garments is improper and a violation of our client's rights.... While long ago, there existed a West Indian Sea Island Cotton Association and Sea Island Cotton was, in fact, grown in

commercial quantities in the West Indies, that is no longer the case. There is no "West Indian Sea Island Cotton Association" extant and "Sea Island Cotton" is no longer grown in commercial quantities in the West Indies.

Therefore, the use of the aforementioned "West Indian Sea Island Cotton" hang-tag appears to be an improper and false designation of the origin of the goods....

Complaint Exhibit M; Affidavit of Michael A. Cornman ("Cornman Aff."), filed April 3, 1990, Exhibit CC.[2] In or about May 1986 a similar letter was sent by Cornman to Saks Fifth Avenue. *See* Martin Aff., Copy of Letter annexed. Both letters asked for written confirmation that the "offending labels" would immediately be removed.

In addition, plaintiffs assert that, during the course of the British Proceeding, Threadtex admitted that in late 1987 or early 1988 Richman purchased a shirt containing the WISICA certification mark at a Filene's Basement store in the New York area. In his affidavit submitted in support of defendants' motion, Richman states that "[o]n a handful of occasions, my attention has been called to goods bearing a WISICA label; but I have never seen any evidence that those items were advertised or that their presence in the United States could be attributed to any of the plaintiffs." Richman Aff. at 7–8.

## DISCUSSION

Defendants argue that summary judgment should be granted in their favor and that the complaint should be dismissed. In addition, defendants argue that counts fifteen and sixteen of the complaint, which assert claims for common law fraud, must be dismissed for failure to state a claim upon which relief may be granted, and that plaintiffs' claims of fraud on the PTO and RICO violations must likewise be dismissed. Finally, defendants assert that the entire complaint should be dismissed as against defendant Richman for failure to

2. Cornman offers this letter in order to demonstrate WISICA's awareness of Threadtex's marketing activities respecting Sea Island cotton. Thus, he states in regard to the letter sent to

state a claim. The Court shall address these contentions in turn.

### I. *Summary Judgment.*

The standards for granting summary judgment in this Circuit are well-established. A court may grant this extraordinary remedy only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Only where the entire record would inevitably lead a rational trier of fact to find for the moving party is summary judgment warranted. *National Railroad Passenger Corp. v. City of New York,* 882 F.2d 710 (2d Cir.1989).

Although the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983), "the mere existence of factual issues—where those issues are not material to claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

It is clear that the movant faces a difficult burden to succeed, however motions for summary judgment, properly employed, permit a court to terminate frivolous claims and defenses, and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co., supra,* 804 F.2d at 12. The motion then:

Macy's in June 1985: "At that time—and, so far as I know, for the first time—a cotton shirt bearing a WISICA label appeared in an American store." Cornman Aff. at 15.

is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

A. Standing—

■ Recognizing that there are obvious disputed factual issues surrounding the proper definition and use of the term "Sea Island cotton," defendants insist that the Court need not reach that issue on this motion. Instead, defendants rest their motion for summary judgment primarily on the contention that plaintiffs lack standing to assert Lanham Act and related common law claims. This argument must be rejected, as it is apparent from the materials submitted by plaintiffs that factual issues exist as to whether plaintiffs have a reasonable commercial interest to be protected, and as to their presence in the United States market.

The complaint contains six claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (claims one through four and claims six and seven), two common law trademark claims (claims eleven and twelve), and two claims alleging common law unfair competition (claims seventeen and eighteen). Under § 43(a) of the Lanham Act prior to its amendment[3]:

Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false

description or representation ... and shall cause such goods or services to enter into commerce ... shall be liable in a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1982) (amended by Pub.L. No. 100–667, tit. I, § 132, 102 Stat. 3946 (1988), effective November 16, 1989).

"Although originally interpreted narrowly, section 43(a) now is considered to confer protection against a myriad of deceptive commercial practices." *Resource Developers, Inc. v. The Statue of Liberty–Ellis Island Foundation, Inc.,* 926 F.2d 134 (2d Cir.1991) (citing *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 270 (2d Cir.1987)). Section 43(a) provides separate causes of action for false designation of origin or source, and for false description or representation. *Id.,* 926 F.2d at 139 (citing cases).

■ Standing under the Lanham Act is restricted to commercial parties. *See Colligan v. Activities Club of New York, Ltd.,* 442 F.2d 686, 692 (2d Cir.), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971). A trade association may be held to have standing on behalf of its members, *see, e.g., National Assoc. of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories,* 850 F.2d 904, 914 (2d Cir.1988), and defendants do not challenge WISICA's standing on this ground. Rather, defendants assert that plaintiffs lack a "commercial stake" in the United States market sufficient to confer standing under the Lanham Act.

In *Johnson & Johnson v. Carter-Wallace, Inc.,* 631 F.2d 186, 189–91 (2d Cir. 1980), the Second Circuit articulated the showing that must be made by a plaintiff in order to satisfy the standing element of

---

**3.** Section 43(a) was amended effective November 16, 1989. The amendments have prospective effect only. Thus, most of the conduct alleged in the complaint, which was filed on November 28, 1989, is governed by the pre-amendment text. However, the amended text applies to any conduct which occurred after November 16, 1989. Any distinctions do not appear to be relevant to the issues before the Court on the instant motion.

§ 43(a), which allows a suit "by any person who believes that he is or is likely to be damaged by the use of any false description or representation." The Court first made clear that, notwithstanding the broad language of the statute, "something more than a plaintiff's mere subjective belief that he is injured or likely to be damaged is required...." *Id.* at 189. Rather, a plaintiff is required to demonstrate "a reasonable basis for the belief that [it] is likely to be damaged as a result of the false advertising." *Id.* at 190. Stated another way, "[w]hat matters is whether a commercial party has a 'reasonable interest to be protected' against the alleged false advertising." *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir.1984) (quoting *Johnson & Johnson v. Carter–Wallace, Inc., supra*, 631 F.2d at 190).

■ It is undeniable that plaintiffs have at least raised a factual question on the issue whether they have a "reasonable interest to be protected" in the instant case. Plaintiffs assert that, because defendants have described and are describing the allegedly cheaper and less fine Egyptian cotton as "Sea Island cotton," United States customers are less likely to purchase genuine West Indian Sea Island cotton, which is more expensive. In addition, plaintiffs have offered evidence of specific instances in which major department stores in the United States have been informed by Threadtex that WISICA does not exist and that its certification labels must be removed from garments sold in the stores. Further, plaintiffs have introduced evidence to the effect that Sea Island cotton is the finest and rarest type of cotton produced. For this reason, it commands a high price. By advertising its Egyptian cotton as Sea Island cotton, defendants in effect have increased the supply of this rare commodity and thus caused the market price to fall, to plaintiffs' detriment.[4]

Defendants ignore these potential harms, instead focusing on the actual presence of products bearing the WISICA certification mark in the United States. Defendants insist that (1) Sea Island cotton is no longer grown in commercial quantities in the West Indies, (2) no products bearing WISICA certification marks have been sold in the U.S. "within memory," excepting a few sporadic sightings, and (3) any West Indian cotton that is grown is sold to Japan. Even assuming that these are the sole relevant inquiries, plaintiffs have raised factual issues regarding each of defendants' contentions. In addition, the cases do not suggest that, in order to have Lanham Act standing to assert claims of false advertising and false designation of origin, a plaintiff must demonstrate a high level of direct commercial activity in the United States.

■ It is true that, under the Lanham Act, in order to demonstrate harm or likelihood of harm as a result of false advertising or false designation of origin it is necessary that the plaintiff be in competition with the defendant. Absent such competition, a plaintiff cannot hope to demonstrate that sales of its own products might be diverted to the defendant's product because of the alleged false advertising. However, it is well-settled that such competition need not be direct, but rather that "[t]he 'likely to be damaged' formulation of section 43(a) ... encompasses any business competitor, either direct or indirect, who may suffer adverse consequences from a statutory violation." *Chromium Industries, Inc. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544, 554 (N.D.Ill.1978) (citing *Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp. 26, 39 (S.D.N.Y.1975)). *See Johnson & Johnson v. Carter–Wallace, Inc., supra*, 631 F.2d at 190 (Indirect competitors may avail themselves of the protection of § 43(a); the competition need not be direct). It is plain that in the instant case plaintiffs have adduced sufficient evidence to raise a factual issue on this point.[5]

---

4. Plaintiffs have also submitted evidence suggesting that salespersons in stores selling defendants' Egyptian cotton products inform potential consumers that the products are made from Sea Island cotton grown in the West Indies.

5. In addition, even had plaintiffs failed to raise a factual issue regarding present commercial interest, they have demonstrated at the very least that "they are considering establishing a commercial venture in the future." *See Berni v.*

Finally, although defendants insist that the true meaning of "Sea Island cotton" is not at issue in this motion, the meaning of the term is significant in at least one respect. Plaintiffs assert that "Sea Island cotton" refers to

> the finest variety and longest staple length *Gossypium barbadense* cotton grown in the world. It was formerly grown in the Sea Islands off the southeastern coast of the United States, in certain portions of the coastal areas of Georgia and South Carolina, and in the Caribbean, particularly the West Indies. It is now grown in limited, commercial quantities only in the West Indies, is in great demand and commands the highest price of all cottons.

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion, filed July 2, 1990 ("Plaintiffs' Memorandum"), at 2 (citing Maynard Aff. at ¶¶ 11 and 12).

Defendants, in contrast, describe the meaning of the phrase "Sea Island cotton" this way:

> The term "Sea Island" as used in the cotton trade has its origins in the 18th century when long staple cotton of exceptional quality was grown on the Sea Islands off the coast of South Carolina, Georgia and Florida. Sea Island Cotton has not been grown in the United States for more than a generation.... The term "Sea Island" as applied to cotton has, however, passed into the modern textile lexicon with varying nuances, but with one consistent theme: it denotes high quality, long-staple cotton.

Defendants' Memorandum at 8 (citing Richman Aff. at ¶ 7).

The parties thus agree that the description "Sea Island cotton" denotes the finest quality, long staple cotton. In addition, the parties agree that "Sea Island" cotton is a generic term which cannot exclusively be appropriated by any single producer. Rather, anyone who produces cotton of the type designated by the term "Sea Island

cotton" is entitled to so describe their product. Plaintiffs, however, have submitted evidence suggesting that Egyptian Giza 45 cotton is not Sea Island cotton, but is of a lesser quality and shorter staple. Defendants, on the other hand, assert that the term Sea Island may properly be applied to any fine, long staple cotton and that their Egyptian cotton is in this category.

■ Drawing all reasonable inferences in favor of plaintiffs, the Court finds the meaning of the term "Sea Island cotton" relevant insofar as it may be said to refer to the rarest and most expensive type of cotton grown in the world. The rarity and exclusivity of a product must, in the Court's view, be considered when assessing the commercial interest of a plaintiff in the United States market. Certainly, a plaintiff producer of a rare commodity cannot be expected to demonstrate the same level of commercial activity in any given market as the producer of mass-marketed goods. In addition, a particular commercial harm occurs where a defendant falsely represents a product of lesser quality and greater quantity as being a relatively rare and fine product. Plaintiffs have raised factual issues as to whether defendants here have done just that. Accordingly, the Court finds that, given the alleged nature of the product at issue in this case, plaintiffs have raised a factual issue regarding their standing to sue for false advertising and false designation of origin. Accordingly, defendants' motion for summary judgment on plaintiffs' Lanham Act and related common law unfair competition claims is denied.

**B. Claims eleven and twelve—**

In their moving papers, defendants also argue that plaintiffs' claims of common law trademark infringement (claims eleven and twelve) should be dismissed on the ground that a certification mark may not be used as a trademark. Plaintiffs, in their Opposi-

*International Gourmet Restaurants of America, Inc.,* 838 F.2d 642, 648 (2d Cir.1988) (citing *National Lampoon, Inc. v. American Broadcasting Co.,* 376 F.Supp. 733, 746 (S.D.N.Y.), *aff'd,* 497 F.2d 1343 (2d Cir.1974)). Further, the evi-

dence of plans of future entry into the market is not scant or conclusory. Rather, plaintiffs' submissions contain evidence of concrete and substantial steps already taken to establish a presence in the United States market.

tion papers, concede that they "inadvertently used the term 'trademark' [in the complaint]," but that they meant to assert a claim for infringement of a common law certification mark. Plaintiffs' Memorandum at 26. Defendants counter by arguing that there is no convincing legal support for the concept of a common law certification mark, and that what little authority does exist is incorrectly decided.

The issue whether a plaintiff may, as a matter of law, state a claim for infringement of a common law certification mark has not been fully briefed by plaintiffs. Under these circumstances, the Court grants defendants' motion to dismiss with respect to the inadvertent claim of common law trademark infringement. Should plaintiffs wish to amend their complaint to assert a claim for infringement of a common law certification mark, they may move for leave to do so, at which time the Court will determine after a full briefing whether such a legal claim is cognizable. Accordingly, claims eleven and twelve of the complaint are dismissed.

C. Laches—

Defendants assert the defense of laches, arguing that the defense bars all of plaintiffs' Lanham Act, common law trademark infringement, and unfair competition claims. According to defendants, Threadtex has been advertising and selling its goods as "Sea Island cotton" and using its trademark in connection with those goods since early 1983. Defendants claim that plaintiffs have had knowledge of this use since at least 1985, and that their failure to challenge such use in a United States forum until the commencement of the instant action in 1989 is inexcusable and prejudices defendants.

▪ In order to establish the defense of laches, a defendant has the burden of demonstrating "that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequit-

ably to assert its rights at this time." *Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1040 (2d Cir.1980) (quoting *Cuban Cigar Brands, N.V. v. Upmann International, Inc.,* 457 F.Supp. 1090, 1096 (S.D.N.Y.1978), *aff'd without op.,* 607 F.2d 995 (2d Cir.1979)).

It appears to be undisputed that plaintiffs did have knowledge of defendants' activities with respect to their use of the term "Sea Island cotton" in connection with their products and the use of the island and double palm tree logo. However, mere knowledge and delay do not constitute laches; more must be shown. *See Cuban Cigar Brands, N.V. v. Upmann International, Inc., supra,* 457 F.Supp. at 1097–98.

▪ In order to prevail on a laches defense, a defendant must establish his own good faith. *Id.* at 1098 (citing cases). Thus, a defendant claiming laches "must be able to demonstrate the absence of any intent to confuse and deceive the public...." *Id.* Plaintiffs in the instant case have raised factual questions as to defendants' good faith in describing their product as "Sea Island cotton." Considered as a whole, the submissions before the Court would permit a reasonable inference that defendants purposefully have acted to deceive the public as to the quality and origin of their products. Immediately upon the expiration of WISICA's registration of its certification mark, defendants registered a substantially similar logo. Although denied registration for the words "Sea Island cotton," defendants have used, and continue to use the term with their logo thus, according to plaintiffs, falsely describing their products. Beneath the logo, defendants have placed the words "Sea Island Growers Ltd.," followed by the statement "Every product made of genuine Sea Island Cotton must bear this trademark. Insist on it. Beware of impostors!" or similar statements. Complaint, Exhibit k. Taken together and with all reasonable inferences drawn in plaintiffs' favor, the Court cannot find that defendants have established their good faith as a matter of law.[6]

6. Defendants argue that the recent case of *Per-* *son's Co., Ltd. v. Christman,* 900 F.2d 1565 (Fed.

## II. *Dismissal of the Fraud Claims.*

### A. Fraud on the PTO—

Claims eight and nine of the complaint allege that defendants fraudulently procured the island and palm trees mark, and seek cancellation of the registered mark pursuant to § 37 of the Lanham Act, 15 U.S.C. § 1119 (claim eight), and damages pursuant to § 38 of the Lanham Act, 15 U.S.C. § 1120 (claim nine). Defendants argue that these claims should be dismissed on the grounds that: (1) the statements were true; (2) the statements to the effect that Threadtex sold Sea Island cotton was not relied upon by the PTO, as the mark as registered did not contain the words "Sea Island cotton"; and (3) that plaintiffs have not suffered any injury for the same reasons that they assertedly lack standing.

 A registered mark may be cancelled based upon misstatements in a trademark application if the plaintiff demonstrates that the statements "(1) were made with knowledge of their falsity, and (2) were material to the determination to grant the application." *Marshak v. Sheppard,* 666 F.Supp. 590, 598 (S.D.N.Y.1987) (citations omitted). Whether the statements were, as defendants claim, "absolutely true" is a question of fact which may not be disposed of on a motion for summary judgment. However, defendants are correct that any statements regarding whether defendants' products were composed of Sea Island cotton were not material to the determination to grant the application, since the mark which was ultimately registered did not contain those words. Accordingly, that portion of plaintiffs' claims which alleges fraud on the PTO based upon the latter statements is dismissed.

### B. Common law fraud—

In Defendants' Memorandum, they argued that plaintiffs' claims for relief based upon common law fraud (claims fifteen and sixteen) should be dismissed pursuant to Rule 12(c) for failure to state a claim. In their answering papers, plaintiffs conceded that their allegations of common law fraud failed to state a claim under New York law, and withdrew those claims. Accordingly, defendants' motion to dismiss claims fifteen and sixteen of the complaint for failure to state a claim is granted, and those claims are dismissed.

### C. RICO—

Defendants argue that plaintiffs' RICO claims (claims nineteen and twenty) are frivolous, and should be dismissed because plaintiffs have not raised a factual issue concerning their injury based upon the allegedly unlawful activity of defendants. For the reasons discussed above, the Court finds that plaintiffs have indeed raised a factual issue regarding injury and thus declines to dismiss the RICO claims.

## III. *Res Judicata and Collateral Estoppel.*

 Defendants argue that, pursuant to principles of res judicata and collateral estoppel, the TTAB's decision sustaining their opposition to the registration of WISICA's certification mark and refusing registration operates to bar WISICA and the other plaintiffs from litigating claims and issues decided against WISICA by the TTAB. Plaintiffs assert that decisions of the TTAB have no preclusive effect in federal court, and that in any event the Court should decline to accord preclusive effect to

Cir.1990), destroys plaintiffs' argument of bad faith. However, that case would only apply, if at all, to defendants' use of an allegedly infringing mark. It does not apply to allegations of deceptive and false description of defendants' products. In *Person's,* the court found that no inference of bad faith could be drawn from use of a foreign mark where defendant believed that plaintiff did not have trademark rights in its mark in the United States. The court stated that plaintiff had not demonstrated any infringement in the U.S., and that the use of the mark

therefore was not wrongful and could not be the basis of a finding of bad faith. This reasoning does not apply to allegations of patently false statements concerning defendants' products. In addition, the Court is of the opinion that, should plaintiffs be permitted to amend their complaint to assert a claim of common law certification mark infringement, summary judgment would not be appropriate on a laches defense, as factual issues exist as to whether plaintiffs' delay in asserting their rights is excusable, and as to the prejudice to defendants.

the TTAB decision in this case based upon the circumstances and the equities involved.

"Under the doctrine of *res judicata*, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Mishal Bin Saud v. The Bank of New York*, 929 F.2d 916, 918 (2d Cir.1991) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). "Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

Plaintiffs first argue that the prior administrative proceedings should not have preclusive effect in this federal court action. In support of this proposition, plaintiffs cite *Freedom Savings and Loan Assoc. v. Way*, 757 F.2d 1176 (11th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985), and *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3 (5th Cir.1974). The Court need not decide this question, however, since it determines that res judicata does not apply, since the claims asserted in the instant action are not the same as the claim before the TTAB; and that collateral estoppel is not appropriate because the issues were not actually decided by the TTAB.

It is apparent that a registration proceeding does not involve the same claim as an action alleging false advertising and fraud. *Cf. Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, No. 89 Civ. 5835, slip op., 1990 WL 160891 (S.D.N.Y. October 17, 1990) (available on Lexis at 1990 U.S. Dist. LEXIS 13759) (registration proceeding and infringement action present significantly different claims; res judicata not appropriate). Accordingly, the doctrine of res judicata does not apply to preclude plaintiffs' claims.

In contrast, collateral estoppel does apply to preclude relitigation of any issue that was actually decided by the TTAB. However, in light of the fact that the TTAB granted defendants a default based upon plaintiffs' failure to answer interrogatories, no issues in the instant action were actually decided, and thus the doctrine of collateral estoppel is inapplicable. *See Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982) (default judgment is not a proper basis for collateral estoppel), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983); *Matter of McMillan*, 579 F.2d 289, 292–93 (3d Cir.1978) (preponderant view is that a default judgment has no collateral estoppel effect). Accordingly, defendants' assertions of claim and issue preclusion are rejected.

## IV. *Claims against Richman.*

Defendants argue that the complaint against Richman should be dismissed pursuant to Rule 12(c) for failure to state a claim. They assert that the complaint fails to allege facts sufficient to hold Richman liable under any legal theory. Rather, defendants contend that Richman acted simply as a corporate officer with respect to all of the fraudulent acts alleged, and therefore that the claims against him individually must be dismissed.

On a motion to dismiss, the Court must read the complaint generously, and must draw all reasonable inferences in favor of the plaintiffs. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986); *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985). As noted above, plaintiffs' well-pleaded allegations must be accepted by the Court as true. *E.g., Jacobson v. Cooper*, 882 F.2d 717, 718 (2d Cir.1989). A claim should be dismissed only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.*, 790 F.2d 20, 22 (2d Cir.1986).

"The general rule is that a corporate officer who participates in a tort, even if it is in the course of his duties, may be held individually responsible." *National Survival Game v. Skirmish, U.S.A., Inc.,* 603 F.Supp. 339, 341 (S.D.N.Y.1985) (holding that complaint stated claims against corporate officers for violations of Lanham Act and state law of unfair competition, and awarding plaintiffs attorneys' fees under Rule 11, Fed.R.Civ.P.) (citing *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir.1978)). Under New York law, "a corporate officer who participates in the commission of a tort, even if he acts on behalf of the corporation and in the course of his corporate duties, may ordinarily be held individually responsible." *Id.* (citing cases).

Specifically with respect to claims of unfair competition, one district court in this Circuit has applied the following test:

> While a corporate officer is not necessarily individually liable for torts committed on behalf of the corporation, personal liability for trademark infringement and unfair competition is established "if the officer is a 'moving, active conscious force behind [the defendant corporation's] infringement.'" *Polo Fashions, Inc. v. Branded Apparel Merch.,* 592 F.Supp. 648 (D.Mass.1984) (citations omitted).

*Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F.Supp. 899, 913 (E.D.N.Y.1988). The court in *Bambu Sales* quoted with approval a portion of the Third Circuit opinion in *Donsco, Inc. v. Casper Corp., supra,* 587 F.2d at 606, noting that the court in that case found liability where the officer "authorized and approved the acts of unfair competition" which formed the basis of plaintiff's claims against the corporation. *Bambu Sales, Inc. v. Sultana Crackers, Inc., supra,* 683 F.Supp. at 913.

In the instant case, plaintiffs allege that Richman is the "president and sole of majority shareholder of Threadtex, and has caused or induced Defendants Threadtex and Growers to do or perform the acts alleged" in the complaint. Complaint at ¶ 10. The complaint alleges misrepresentations made by Richman to the PTO in connection with Threadtex's trademark application, and alleges that Richman participated in the allegedly fraudulent acts of the corporate defendants. Under these circumstances, the Court finds that the complaint states a claim against Richman.

## V. *Rule 11 Sanctions.*

Both plaintiffs and defendants move for sanctions pursuant to Rule 11, Fed.R.Civ.P. Plaintiffs argue that defendants should be sanctioned for asserting baseless contentions. Defendants argue that plaintiffs' RICO claims are frivolous, and that sanctions are therefore appropriate. In addition, defendants argue in their Reply Memorandum that, in light of plaintiffs' withdrawal of their concededly insufficient common law fraud claims, as well as their "inadvertent" claim for infringement of a "common law trademark" instead of "common law certification mark," sanctions should be awarded in connection with those claims.

While the imposition of sanctions under Rule 11 is mandatory when a claim has absolutely no chance of success,[7] the Court is to avoid hindsight review of the claim, to resolve all doubts in favor of the signer of the submission, and to refrain from imposing sanctions where such action would stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. *Motown Productions, Inc. v. Ca-*

---

**7.** Rule 11 provides, in pertinent part, that:
> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

*comm, Inc.*, 849 F.2d 781, 785 (2d Cir.1988); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

 There need be no showing of bad faith on the part of the signer of the submission at issue for the imposition of sanctions. *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir.1989). Instead, sanctions are appropriate where an attorney's signed submission fails to meet a test of objective reasonableness. *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir.1990) (citing *Oliveri v. Thompson, supra*, 803 F.2d at 1275).

> Although other goals for the imposition of sanctions under Rule 11 may exist, for example, punishment for violation of the Rule, compensation for victim [sic] of the violation, and deterrence of others, focus should be on the drafters' aim of discouraging dilatory and abusive litigation tactics and eliminating frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process. Sanctions are the deterrent threat [citation omitted], by which a district court may deal with counsel who ignore their broadened responsibility under the amended Rule to forward the effective administration of justice.

*McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21 (2d Cir.1990).

 Turning first to plaintiffs' application for sanctions, although the Court agrees that plaintiffs have raised factual issues regarding their presence in the United States market sufficient to demonstrate a reasonable interest to be protected under the Lanham Act and pendent state law unfair competition claims, and although the question is a close one, the Court determines that Rule 11 has not been violated. Defendants argued, unsuccessfully, that the evidence submitted by plaintiffs in opposition to the motion was inadmissible for a variety of reasons. The Court cannot say that these arguments were frivolous and,

accordingly, plaintiffs' application for sanctions is denied.

Defendants also seek sanctions. With respect to plaintiffs' RICO claims, the Court denies defendants' motion for sanctions inasmuch as the RICO claims have been found sufficient to withstand summary judgment. A different result is required, however, with respect to plaintiffs' common law fraud and common law trademark infringement claims. The former have been withdrawn by plaintiffs in response to defendants' motion to dismiss, and the latter have been dismissed by the Court with permission to move to amend the complaint properly to allege claims of infringement of a common law certification mark.

 Where a claim is clearly "destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present rule, rule 11 requires a sanction." *O'Malley v. New York City Transit Authority, supra*, 896 F.2d at 706. "District courts are given broad discretion in tailoring appropriate and reasonable sanctions under rule 11." *Id.* at 709. Under the circumstances, the Court sanctions plaintiffs in the amount of $2500.00 for the assertion of the aforementioned baseless claims. In fashioning this sanction, the Court notes that the claims were withdrawn following defendants' argument regarding their validity, and that their inclusion in the complaint thus did not cause a great deal of unnecessary expense and delay.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. Claims eleven and twelve of the complaint, alleging common law trademark infringement, are dismissed with permission to move for leave to amend the complaint to assert claims of common law certification mark infringement. Those portions of plaintiffs' claims alleging fraud on the PTO which rely on defendants' assertions that they sell Sea Island cotton are also dismissed. Finally, claims fifteen and sixteen

of the complaint, which allege common law fraud, are dismissed for failure to state a claim. Defendants' motion to dismiss and for summary judgment is denied in all other respects.

Plaintiffs' application for sanctions pursuant to Rule 11 is denied. Defendants' application for sanctions is granted, and plaintiffs are directed to compensate defendants in the amount of $2500.00 by April 30, 1991. The parties are directed to submit a joint status letter by May 3, 1991, informing the Court concerning payment of the aforementioned sanctions, the time required for the completion of discovery, as well as of plaintiffs' intention with respect to a motion for leave to amend the complaint to assert claims of common law certification mark infringement.

It is so ordered.