SECURITIES INDUSTRY
ASSOCIATION, et al.,
Plaintiffs,

v.

Gerald LEWIS, in his official capacity
as Comptroller of the State of
Florida, etc., Defendant.

No. 90–1934–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Oct. 31, 1990.

John F.X. Peloso, New York City, Peter Buscemi, Washington, D.C., E. Barclay Cale, Miami, Fla., for plaintiffs.

David J. Audlin, Jr., Asst. Atty. Gen., Tallahassee, Fla., for defendant.

MEMORANDUM OPINION

ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Plaintiffs', SECURITY INDUSTRY ASSOCIATION, et al., Motion for Summary Judgment. Upon consideration of said motion and having heard oral argument on this matter on October 5, 1990, the Court finds as follows:

## I. FACTUAL BACKGROUND

In this case, Plaintiffs challenge the Constitutionality of § 517.122, Fla.Stat., as amended by the Florida Legislature. No genuine issue of material fact is presented as the parties agree on the facts. The old version of § 517.122 provided as follows:

> 517.122 Arbitration—Any agreement to provide services that are covered by this chapter, entered into after January 1, 1987, by a person required to register under this chapter, for arbitration of disputes arising under the agreement may provide to an aggrieved party the option of having arbitration before and pursuant to the rules of the American Arbitration Association.

Thus, before § 517.122 was amended, the parties to an arbitration agreement had the *option* of arbitration "before and pursuant to the rules of the American Arbitration Association.

The amendment to § 517.122, by contrast, is mandatory. It provides:

> 517.122 Arbitration—Any agreement to provide services that are covered by this chapter, entered into after October 1,

1990, by a person required to register under this chapter, for arbitration of disputes arising under the agreement shall provide to an aggrieved party the option of having arbitration before and pursuant to the rules of the American Arbitration Association or other independent nonindustry arbitration forum as well as any industry forum.

Plaintiffs include eight securities broker-dealers that regularly transact business in Florida.[1] Under the arbitration clauses that are regularly included in Plaintiffs' customer agreements, there is no provision which permits an option to arbitrate before the American Arbitration Association or other "independent nonindustry arbitration forum." Thus, Plaintiffs' customer agreements violate the amended version of § 517.122. Plaintiffs challenge the Constitutionality of this amended version of the statute on the grounds that it directly conflicts with Sections 2 and 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), and therefore, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2.

## II. STANDARD OF REVIEW

Where there is no genuine issue of material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Trustees of the Plumbers Local No. 519 Health and Welfare Trust Fund v. Garcia*, 677 F.Supp. 1554, 1556 (S.D.Fla.1988). "The mere fact that the [parties] vigorously dispute the legal conclusions to be drawn from the facts presented ... [i]s no bar to the grant of summary judgment." *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721, 728 n. 13 (5th Cir.1976). However, summary judgment is an extreme remedy which should not be granted unless the moving party has established the right to judgment beyond controversy. *Id.*

**1.** *Amicus curiae* briefs were filed by the North American Securities Administrators Association, Inc. ("NASAA") and by The Academy of Florida Trial Lawyers ("Academy").

**2.** The Supreme Court stated,
... we need not resolve [this issue] to decide this case, for we conclude that even if §§ 3

## III. ANALYSIS

### A. *Validity of § 517.122 under Section 2 of the Federal Arbitration Act*

■ Section 2 of the FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." In other words,

> state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of §·2.

*Perry v. Thomas*, 482 U.S. 483, 489–90, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426 (1987); *See also, Southland Corp., et al. v. Keating, et al.*, 465 U.S. 1, 10–11, 104 S.Ct. 852, 858–859, 79 L.Ed.2d 1 (1984); *Securities Industry Association, et al. v. Connolly, etc., et al.*, 883 F.2d 1114, 1120 (1st Cir. 1989).

Plaintiffs and Defendant cite *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), in support of their respective positions. In *Volt*, the Supreme Court considered whether the California Arbitration Act, Cal.Civ.Proc.Code Ann. § 1280 *et seq.* (West 1982), was preempted by the FAA where the parties had agreed that their arbitration agreement would be governed by California law. The Supreme Court did not decide whether § 1281.2(c), Cal.Civ.Proc.Code Ann. (West 1982), conflicted with the FAA absent the parties' agreement to be governed by California law.[2] The Court merely held that the parties' agreement to settle their disputes according to California law was valid because

and 4 of the FAA are fully applicable in state court proceedings, they do not prevent application of Cal.Civ.Proc.Code Ann. § 1281.2(c) to stay arbitration where, as here, the parties have agreed to arbitrate in accordance with California law.

the parties had the right to freely enter arbitration agreements, regardless of whether the California law conflicted with the FAA. The Court reasoned that the primary purpose of the FAA is to ensure that

> private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and the parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see *Mitsubishi* [*Motors Corp. v. Soler Chrysler–Plymouth Inc.*], *supra*, 473 U.S. [614], at 628, 105 S.Ct. [3346], at 3353 [87 L.Ed.2d 444 (1985)], so too may they specify by contract the rules under which that arbitration will be conducted.

*Volt*, 489 U.S. at 479, 109 S.Ct. at 1255. Thus, the Court upheld the parties' agreement to follow California law which allowed arbitration to be stayed pending resolution of a related litigation.

The Supreme Court has rigorously enforced Congress' intent "to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland*, 465 U.S. at 16, 104 S.Ct. at 861. In *Perry*, the Court was abundantly clear in stating,

> Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. 'We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.'

482 U.S. at 489–90, 107 S.Ct. at 2525–26 (quoting *Southland*, 465 U.S. at 11, 104 S.Ct. at 858).

The principles set forth in the above cited Supreme Court cases have been consistently applied to invalidate state statutes, regulations and case law that threatened to interfere with the ability of contracting parties to freely enter into arbitration agreements. *See, e.g., Securities Industry Association, et al. v. Connolly, etc., et al.,* 883 F.2d 1114, 1120, 1119–21 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990)[3] and cases cited therein; and *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995 (8th Cir.1972).

Under the amended version of § 517.122, parties to an arbitration agreement must provide an option for non-industry arbitration. Failure to do so would result in the arbitration agreement being held invalid. Defendant does not cite, in his brief or at oral argument, one case to distinguish the legion of cases that simply hold this type of legislative encroachment, directed specifically to arbitration agreements, to be violative of Section 2 of the Federal Arbitration Act. *Volt*, 489 U.S. 468, 109 S.Ct. at 1252–53; *Perry*, 482 U.S. at 489–90, 107 S.Ct. at 2525–26; *Southland Corp.*, 465 U.S. at 10–11, 104 S.Ct. at 858–859; *Connolly*, 883 F.2d at 1120. The *amicus curiae* briefs filed by NASAA and the Academy also fail to contradict the holdings in these cases.

Defendant's reliance on *Eassa Properties v. Shearson Lehman Brothers, Inc.,* 851 F.2d 1301 (11th Cir.1988), and *Hull v. Norcom, Inc.,* 750 F.2d 1547 (11th Cir. 1985), is misplaced. In *Eassa*, the issue was whether a partner with actual authority to bind a partnership may bind other partners in the partnership to an arbitration agreement. *Hull* involved the issue of whether an arbitration agreement is mutually binding where one party reserves the

---

**3.** Defendant argues that the *Connolly* case is distinguishable from the instant case. While this Court agrees that the Massachusetts regulations involved in *Connolly* were more intrusive than § 517.122 on the parties' ability to freely negotiate their arbitration agreement, the Eighth Circuit's reasoning is equally applicable here. The *Connolly* court stated,

> What seems beyond dispute at this juncture is that no state may simply subject arbitration to individuated regulation in the same manner as it might subject some other unprotected contractual device ...

*Connolly*, 883 F.2d at 1120. The court also cited numerous decisions to the same effect.

option to raise and resolve any and all disputes that it may have against the other party in a court of law rather than through arbitration. Thus, both cases involved issues of state law that were not applicable only to the enforceability of agreements to arbitrate.

Defendant does not contest the fact that § 517.122, as amended, affects only arbitration agreements. He argues that arbitration agreements which provide only industry-controlled arbitration restrain trade, and the state should, therefore, be able to legislate to prohibit such arbitration agreements. The state is free to legislate in a way that affects the validity, revocability and enforceability of contracts generally. However, a state law that singles out arbitration agreements, as does the amended version of § 517.122, conflicts with section 2 of the FAA.

**B.** *Validity of § 517.122 under Section 5 of the Federal Arbitration Act*

■ The Court finds that § 517.122 also violates section 5 of the FAA. Section 5 of the FAA provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed ..." The language is clear. Parties are free to select the arbitrators and arbitral forums for resolving their disputes.

In *McMahon v. Shearson/American Express, Inc.*, 709 F.Supp. 369 (S.D.N.Y.1989), *rev'd in part on unrelated issue*, 896 F.2d 17 (2d Cir.1990), the court, mindful that the Supreme Court requires courts to rigorously enforce agreements to arbitrate, held that

"Rigorous enforcement" demands respect for a forum selection method voluntarily adopted by the parties, which should be given specific enforcement absent a strong showing of "such grounds as exist at law or in equity for" its revocation ... The method agreed upon by the parties for naming an arbitrator is explicit and unambiguous and therefore must be given controlling effect. We have no power to change any of the terms of the agreement. "If in the agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed."

*Id.* at 372–73 (quoting 9 U.S.C. §§ 2 & 5).

Defendant argues that rather than limiting arbitration options, § 517.122 expands the parties' choices by requiring more options to be provided in the customer agreements. This argument ignores the fact that the parties may choose to exclude the option of a judicial resolution of their disputes. If a securities broker-dealer and his customer agree by an otherwise valid contract to direct their dispute to a securities industry arbitrator only, this agreement would be held invalid under § 517.122 for failing to provide an option for non-industry arbitration. Section 5 of the FAA prohibits such a limitation on the parties' ability to decide which type of arbitration agreement to enter.

## IV. CONCLUSION

Sections 2 and 5 of the FAA allow the parties to an arbitration agreement to freely choose the terms of their agreement. The legislative encroachment imposed by § 517.122 violates the protections embodied in both sections 2 and 5 of the FAA, and therefore, violates the Supremacy Clause.

Accordingly, it is hereby,

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment is GRANTED. Plaintiffs shall submit a proposed Order of Final Judgment within ten (10) days after the entry of this Order.

DONE AND ORDERED.