**FLINT WARM AIR SUPPLY CO., INC., Plaintiff,**

v.

**YORK INTERNATIONAL CORP., Defendant.**

No. 99–CV–75326–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 2000.

John Herman, Ferndale, MI, for plaintiff.

Patrick G. Kruse, Bloomfield Hills, MI, Dennis G. Bonucchi, Birmingham, MI, for defendant.

*OPINION AND ORDER REGARDING THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT*

ROSEN, District Judge.

### I. *INTRODUCTION*

This declaratory judgment action is presently before the Court on the parties' Cross–Motions for Summary Judgment. Responses and Reply Briefs, as well as several Supplemental Briefs have been

filed by the parties. Having reviewed and considered the parties' briefs and supporting documents, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

This is a contract dispute that is currently pending before the American Arbitration Association in Philadelphia, Pennsylvania. Plaintiff, Flint Warm Air Supply Company ("Flint Warm Air"), a Michigan corporation with its principal place of business in Flint, Michigan, instituted this judicial action in Genesee County Circuit Court seeking declaratory relief. Defendant York International Corporation ("York International"), a Delaware corporation with its principal place of business in Pennsylvania, timely removed the action to this Court on diversity of citizenship grounds. Plaintiff is a heating and cooling equipment wholesaler and Defendant is a manufacturer of heating and cooling equipment.

On December 21, 1988, Central Environmental Services ("CES"), a division of York International, entered into a "Distributor Sales Agreement" with Plaintiff Flint Warm Air. This Agreement provided for Flint Warm Air's marketing, sales and distribution of "Luxaire" heating and cooling equipment as a non-exclusive distributor of Luxaire products. The contract further specified that Flint Warm Air would have an "independent contractor" relationship with CES:

> The relationship between CES and DISTRIBUTOR shall be that of seller and buyer, respectively. All purchases and resales of Products by DISTRIBUTOR shall be for DISTRIBUTOR'S own account as a principal and not as an agent of CES. DISTRIBUTOR shall act in all respects as an independent contractor

and not as a representative or agent of CES.

[*See* Plaintiff's Response Ex A.]

Article 9 of the Agreement contains an arbitration and a forum selection and choice of law provision which provides as follows:

> **All claims, disputes and controversies arising out of or relating to the Distributor Sales Agreement, or the breach thereof, shall, in lieu of court action, be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association;** provided, however, in CES' discretion, claims for monies due CES from DISTRIBUTOR may be pursued in court action, in lieu of arbitration. Any judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. **The site of the arbitration or court action shall be York, Pennsylvania, unless another site is mutually agreed between the parties.** The parties agree that any party to the arbitration shall be entitled to discovery of the other party as provided in the Federal Rules of Civil Procedure; provided however, that any such discovery shall be completed within four (4) months from the date the Demand for Arbitration is filed with the American Arbitration Association. Costs and expenses, including reasonable attorney's fees, may be awarded by the arbitrator(s). **This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.**

[*See* Plaintiff's Response Ex. A (emphasis added).]

After a dispute developed between the parties over York's decision to terminate the Distributor Sales Agreement, Flint Warm Air filed a demand for arbitration with the American Arbitration Association ("AAA") in Southfield, Michigan on August 23, 1999. [*See* Defendant's Ex. B.] York answered the Demand on September 3, 1999, and in that answer, pointed out to

the AAA Case Administrator that Article 9 of the contract reflected the parties' agreement that the locale of the arbitration would be York, Pennsylvania. [*See* Defendant's Ex. C.]

Upon receipt and review of York's September 3 answer, the AAA Case administrator wrote the parties on September 16, 1999 advising them that "[p]ursuant to your contract language, the hearing locale is York, PA. Therefore, we are transferring this file to our Pennsylvania office for further administration." [*See* Defendant's Ex. D.]

Notwithstanding that it was Plaintiff who instituted arbitration proceedings pursuant to the arbitration clause in the contract, after being notified by the Southfield AAA that the case was being transferred to Pennsylvania pursuant to the contract's arbitration provision, on September 21, 1999, Plaintiff wrote to George Wood of the Philadelphia AAA, telling him that "contractual provisions which require that arbitration or litigation be conducted outside this state are unenforceable according to Michigan law," and cited as support for this contention Section 27 of the Michigan Franchise Investment Act, M.C.L. § 445.1527(f). [*See* Defendant's Ex. E] Plaintiff also contended that the Michigan law precludes enforcement of the choice of law provision. *Id.* Plaintiff further pointed out to Mr. Wood that

> According to R–8 of the Commercial Arbitration Rules the *arbitrator* must make a determination as to the appropriate jurisdiction. Under R–3 the term "arbitrator" refers to the arbitration panel. Jurisdictional determinations may be made by the arbitrator as a preliminary matter or at the scheduled hearing.

*Id.*

On October 5, 1999, York sent a letter to the Philadelphia AAA administrator disputing Plaintiff's contentions. [*See* Defendant's Ex. F.]

As a result of York having disputed Plaintiff's opinions concerning the unenforceability of choice of forum and choice of law provisions in the contract's arbitration clause, on November 2, 1999, Plaintiff filed a Complaint for Declaratory Relief in the Genesee County Circuit Court. York subsequently removed the action to this Court on diversity of citizenship grounds.

In its Complaint, Plaintiff requested that the Court enter a declaratory judgment declaring that the Article 9 of its Contract with Defendant CES/York International is void and unenforceable insofar as it calls for arbitration to be conducted in Pennsylvania, and not in Michigan. Plaintiff also requests that the Court declare unenforceable the choice of law provision in Article 9 providing that its Agreement with York is to be governed by Pennsylvania law.

Meanwhile, on December 8, 1999, Michael Skelly, the Administrator of the Philadelphia AAA wrote the parties in response to their September 21 and October 5 correspondence, informing them that

> After careful consideration of the parties' contentions, the Case Administrator Vice President has determined that the arbitration of this matter shall be held in YORK, PA and administration shall be conducted by this office.

[*See* York's Response Ex. 1.]

Defendant subsequently moved for summary judgment in this action, and in response, Plaintiff cross-moved for summary judgment. Briefing continued through the end of July 2000 and is now completed. Therefore, this matter is ripe for adjudication.

Two principal issues are presented the parties' cross-motions: (1) whether the Michigan Franchise Investment Law's limitations on choice of forum and/or choice of law are preempted under the Federal Arbitration Act; and (2) whether the Flint Warm Air–CES "Distributor Sales Agreement" is actually a franchise agreement and, as such, subject to the Michigan Franchise Investment Law, M.C.L. § 445.1500 *et seq* (the "MFIL").

## III. DISCUSSION

### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper " 'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Fed. R.Civ.P. 56(c).

Three 1986 Supreme Court cases—*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[1] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989).

The Court will apply the foregoing standards in deciding the parties' cross-motions for summary judgment in this action.

### B. THE FAA PREEMPTS MICHIGAN STATE LAW PROHIBITION AGAINST ENFORCEABILITY OF ARBITRATION AGREEMENTS CALLING FOR ARBITRATION OUTSIDE OF THE STATE OF MICHIGAN

At issue in this case is the applicability of Michigan's prohibition in Section 27 of its Franchise Investment Law, M.C.L. § 445.1527(f), rendering void contractual

---

**1.** . "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure*, § 2727, at 35 (1996 Supp.).

provisions which require that arbitration (or litigation) be conducted outside of the State of Michigan.

M.C.L. § 445.1527 provides, in pertinent part, as follows:

Sec. 27. Each of the following provisions is void and unenforceable if contained in any document relating to a franchise:

\* \* \* \* \* \*

(f) A provision requiring that arbitration or litigation be conducted outside this state This shall not preclude the franchisee from entering into an agreement, at the time of arbitration, to conduct arbitration at a location outside this state.

M.C.L. § 445.1527(f).

A secondary issue presented here is the enforceability of the contractual choice-of-law provision calling for application of Pennsylvania law. Plaintiff claims that under Michigan decisional law, a choice of law provision calling for the application of Pennsylvania, as opposed to Michigan law, is unenforceable.

Defendant argues that both of these issues are matters for the arbitrators, not the Court, to decide. Therefore, the Court should decline to rule on the merits of Plaintiff's contentions and remand the case to the American Arbitration Association for determination.

The starting point of the Court's discussion is the Federal Arbitration Act itself.

The Federal Arbitration Act, 9 U.S.C. § 2 provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

In *Moses H. Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) the Court determined that Section 2 "create[s] a body of federal substantive law of arbitrability, applicable to *any* arbitration agreement within the coverage of the act."

There is no dispute that the Flint Warm Air–CES/York Distributor Sales Agreement evidences "a transaction involving commerce." Further, the Agreement contains a provision requiring arbitration of "all claims, disputes and controversies arising out or relating to" the contract:

**All claims, disputes and controversies arising out of or relating to the Distributor Sales Agreement, or the breach thereof, shall, in lieu of court action, be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association;** provided, however, in CES' discretion, claims for monies due CES from DISTRIBUTOR may be pursued in court action, in lieu of arbitration. Any judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. **The site of the arbitration or court action shall be York, Pennsylvania, unless another site is mutually agreed between the parties.** The parties agree that any party to the arbitration shall be entitled to discovery of the other party as provided in the Federal Rules of Civil Procedure; provided however, that any such discovery shall be completed within four (4) months from the date the Demand for Arbitration is filed with the American Arbitration Association. Costs and expenses, including reasonable attorney's fees, may be awarded by the arbitrator(s). **This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.**

[Distributor Sales Agreement, Article 9, Plaintiff's Reply Ex. A (emphasis added).]

Clearly, the Distributor Sales Agreement is within the coverage of the FAA.

Both the Supreme Court and the Sixth Circuit have repeatedly and emphatically reminded lower courts that when parties have contracted for extra-judicial resolution of their disputes through arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See, Moses H. Cone Memorial Hospital, supra,*, 460 U.S. at 24–25, 103 S.Ct. at 941; *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514U.S.52, 57, 514 U.S. 52, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995); *Ferro Corporation v. Garrison Industries, Inc.,* 142 F.3d 926, 937 (6th Cir.1998).

■ It was specifically to codify a national policy favoring arbitration that the Federal Arbitration Act was enacted. *See, Mastrobuono, supra,* 514 U.S. at 52–54, 115 S.Ct. at 1214 (the central purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms."); *Southland Corp. v. Keating, supra* (through the FAA, Congress "declared a national policy favoring arbitration and withdrew the power of states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve be arbitration.") *See also, Allied–Bruce, supra,* 513 U.S. at 270–71, 115 S.Ct. at 837–38 (in passing the FAA, Congress was motivated by a desire to change the anti-arbitration rule).

The Supreme Court has recognized only two limitations on the enforceability of arbitration agreements subject to the FAA: (1) they must be a part of either a maritime contract or a contract dealing with interstate commerce; and (2) arbitration agreements may be revoked "upon grounds as exist at law or in equity for the revocation of any contract." *Southland,* 465 U.S. at 10–11, 104 S.Ct. at 858. The Supreme Court has construed this "grounds at law or in equity" revocation exception as applying only claims of "fraud in the inducement" in the making of the agreement to arbitrate, not to claims that the contract, as a whole, was fraudulently

induced. *See Prima Paint Corp. v. Flood & Conklin Mfg.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). *See also, Ferro Corp. v. Garrison Industries, supra.*

Plaintiff does not in any way challenge the validity of the contract or any part thereof, nor has any claim ever been made by Plaintiff that it was fraudulently induced to agree to the arbitration provision in that contract. Indeed, Plaintiff has never sought revocation of the contract or the arbitration provision, and, in fact, has effectively *admitted* the validity of the arbitration clause by its own action in initiating the arbitration. Plaintiff's sole contention is that it is entitled to arbitrate this action in Michigan. This is plainly a "claim, dispute, or controversy arising out of or relating to the Distributor Sales Agreement."

■ As indicated, Plaintiff contends that even though the Agreement calls for arbitration in Pennsylvania, that part of the arbitration clause is unenforceable under the Section 27(f) of the Michigan Franchise Investment Law. The Supreme Court, however, has made clear that other than the fraud-in-the-inducement revocation exception, "nothing in the [FAA] indicat[es] that the broad principle of enforceability is subject to *any* additional limitations of state law." *Southland, supra,* 465 U.S. at 11, 104 S.Ct. at 858. Thus, the Court has steadfastly adhered to its repeated pronouncements that private arbitration agreements are to be "enforced *according to their terms.*" *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford University,* 489 U.S. 468, 478–9, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (emphasis added).

In *Southland,* the Court was called upon to determine whether a provision in the "void and unenforceable provisions" section of the California Franchise Investment Law—which is substantially similar to the MFIL—and the California Supreme Court's determination that claims under that provision required judicial consider-

ation was preempted under the FAA. The specific provision in the CFIL at issue in Southland provided as follows:

"Any condition, stipulation, or provision purporting to bind any person acquiring a franchise to waive compliance with any provision of this law or any rule or order hereunder is void."

465 U.S. at 9, 104 S.Ct. at 858, quoting Cal. Corp.Code § 31512 (West 1977).

As indicated, the California Supreme Court had interpreted this statute to require judicial consideration of claims brought under the State statute and accordingly refused to enforce the parties' contract to arbitrate such claims. The Supreme Court held that as interpreted by the California Supreme Court, "the California Franchise Investment Law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause." *Id.* The *Southland* Court reasoned,

In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. We hold that § 31512 of the California Franchise Investment Law violates the Supremacy Clause.

*Id.* 465 U.S. at 15, 104 S.Ct. at 861.

In reaching that conclusion, the Court expressly rejected the argument that the California law should be upheld because it evidenced a state policy of providing special protection to franchisees, explaining:

If we accepted this analysis, states could wholly eviscerate Congressional intent to place arbitration agreements "upon the same footing as other contracts," H.R.Rep. No. 96 [68th Cong., 1st Sess.], 1 [ (1924) ], simply by passing statutes such as the Franchise Investment Law. We have rejected this analysis because it is in conflict with the Arbitration Act and would permit states to override the declared policy requiring enforcement of arbitration agreements

465 U.S. at 16, n. 11, 104 S.Ct. at 861, n. 11.

Thus, the *Southland* Court reversed the California Supreme Court's judgment denying enforcement of the arbitration agreement. *Id.,* 465 U.S. at 16, 104 S.Ct. at 861.

The *Southland* decision was re-affirmed by the Court in *Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) in which the Court upheld the enforceability of the terms of an arbitration agreement governed by Alabama law even though an Alabama statute provided that arbitration agreements are unenforceable. Similarly, in *Mastrobuono v Shearson Lehman Hutton, Inc., supra,* the Court held that the FAA preempts New York's decisional law which prohibited arbitrators from awarding punitive damages notwithstanding that the parties inclusion of a New York choice-of-law provision in their contract. *See also, Ferro Corp. v. Garrison Industries, supra* in which the Sixth Circuit applied *Mastrobuono* in determining that the inclusion of an Ohio choice-of-law provision did not require judicial determination of the plaintiff's fraud-in-the-inducement of the contract claim, notwithstanding that Ohio's arbitration rules required judicial determination of such claims.

At least one District Court has been called upon to determine whether the precise subsection of the Michigan Franchise Investment Law at issue here is preempted under the FAA and determined that it is so preempted. In *Alphagraphics Franchising, Inc. v. Whaler Graphics, Inc.,* 840 F.Supp. 708 (D.Ariz.1993), the plaintiff, a franchisor, filed a demand for arbitration with the American Arbitration Association office in Phoenix, Arizona pursuant to the terms of an arbitration clause in their franchise agreement which called for arbitration to be held in Tucson, Arizona. The defendant franchisees whose business was located in Michigan, did not oppose arbitration but refused to submit to arbitration in Arizona arguing that the choice of forum for arbitration provision in the parties' contract was unenforceable under the MFIL. Seeking to compel the defendants

to arbitrate the dispute between the parties, the plaintiff filed an action in the United States District Court for Arizona and moved to compel arbitration in Tucson, Arizona as called for in the franchise agreement.

The *Alphagraphics* court held that the MFIL was preempted under the FAA, and explained that ruling as follows:

> Section 2 of the FAA provides "that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" The FAA "was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' and place such agreements 'upon the same footing as other contracts.'" The United States Supreme Court has stated that it "see[s] nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law."
>
> The FAA does not contain any express preemption provisions and does not indicate a congressional intent to occupy the entire field of arbitration. "But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be preempted to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the full accomplishment and execution of the full purposes and objectives of Congress.'" Congressional passage of the FAA "was motivated first and foremost by a congressional desire to enforce agreements into which parties had en-

tered."... "It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."

> **Because the FAA's primary purpose is to ensure that arbitration agreements are enforced according to their terms and Section 27(f) of the MFIL imposes limitations on the method and manner by which the parties agreed to arbitrate their disputes, it is preempted. A number of courts have found state statutes imposing limitations on the method and manner of arbitration preempted because the statutes conflicted with the FAA's mandate to enforce arbitration agreements on an equal footing with other contracts.** See *Saturn Distrib. Corp. v. Williams,* 905 F.2d 719 (4th Cir.), *cert. denied,* 498 U.S. 983, 111 S.Ct. 516, 112 L.Ed.2d 527 (1990); *Securities Indus. Ass'n v. Connolly,* 883 F.2d 1114 (1st Cir.1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990); *Webb v. R. Rowland & Co., Inc.,* 800 F.2d 803 (8th Cir.1986); *Collins Radio Co. v. Ex–Cell–O Corp.,* 467 F.2d 995 (8th Cir.1972); *Securities Indus. Ass'n v. Lewis,* 751 F.Supp. 205 (S.D.Fla. 1990); *Seymour v. Gloria Jean's Coffee Bean Franchising Corp.,* 732 F.Supp. 988 (D.Minn.1990). **In each of the above cases, the state statute placed greater restrictions on arbitration agreements than on other contracts and, thus, the courts held them to be preempted. Here, the Michigan statute at issue is no different.**

840 F.Supp. 708 (some citations omitted).[2]

██ The foregoing authorities make clear that arbitration agreements are to be

---

**2.** The Court went on to find, however, that the defendants were fraudulently induced to agree to the arbitration clause in the contract because when they were presented with the franchise papers, they were also presented with a two-page notice advising them that the choice of forum provision would not be enforced The notice read as follows:

> THE STATE OF MICHIGAN PROHIBITS CERTAIN UNFAIR PROVISIONS THAT

ARE SOMETIMES IN FRANCHISE DOCUMENTS.

> IF ANY OF THE FOLLOWING PROVISIONS ARE IN THESE FRANCHISE DOCUMENTS, THE PROVISIONS ARE VOID AND CANNOT BE ENFORCED AGAINST YOU.

The court determined that this disclosure mislead the defendants into believing that the Arizona choice of forum provision would not be enforced against them. Therefore, the

enforced "according to their terms" and that the Michigan Franchise Investment Law's prohibition against extra-territorial arbitration agreements, "impose[s] limitations on the method and manner of arbitration," which cannot be permitted under the Federal Arbitration Act and the Supremacy Clause. Accordingly, the Court finds that Section 27(f) of the MFIL is preempted under the FAA.[3] Therefore, the parties' will proceed to arbitration as provided in the Distributor Sales Agreement.[4]

## CONCLUSION

For the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. Accordingly,

IT IS FURTHER ORDERED that this case be, and hereby is, DISMISSED with prejudice.

## OPINION AND ORDER REGARDING THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

The Court having this date entered an Opinion and Order granting Defendant's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment and dismissing Plaintiff's Complaint in its entirety with prejudice,

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a JUDGMENT OF DISMISSAL WITH PREJUDICE be and hereby is entered.

---

court found that they had been fraudulently induced into agreeing to the arbitration provision.

3. Similarly, to the extent that Plaintiff relies upon Michigan decisional law holding that a choice of law provision, and specifically a Pennsylvania choice of law provision, would be contrary to the fundamental policy of the state of Michigan in light of the protections afforded franchisees under the MFIL, *see, Martino v. Cottman Transmission Sys.,* 218 Mich.App. 54, 554 N.W.2d 17 (1996), such decisional law is also preempted under the FAA. *See, Mastrobuono, supra; Southland, supra; Ferro, supra.*

4. To the extent that Plaintiff wishes to pursue its construction of the Sales Distributor Agreement as constituting a "franchise," this is a matter for the arbitrators to decide as it is clearly a "claim relating arising out of or relating to" the Distributor Sales Agreement.